M. Richardson Lynn, Jr. (CA Bar #051034)
WAGNER, LYNN & LUJAN
16870 West Bernardo Drive, Suite 400
San Diego, CA 92127
Telephone: (858) 674-6949
Facsimile: (858) 674-6959

Attorneys for Plaintiff
Tommy LaNier

**UNITED STATES DISTRICT COURT**

**FOR THE SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| TOMMY LaNIER,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA; CITY OF CHULA VISTA, a Municipality, KEAN McADAM, an individual; CALIFORNIANS FOR DRUG FREE YOUTH, INC., a California corporation aka CADFY,<br><br>Defendants. | **Case No. 15-CV-0360 BAS (BLM)**<br><br>**FIRST AMENDED COMPLAINT FOR RECOVERY OF DAMAGES FOR DEFAMATION; UNLAWFUL RETALIATION UNDER THE CALIFORNIA FEHA; UNLAWFUL RETALIATION UNDER FEDERAL TITLE VII; RECOVERY UNDER THE FEDERAL TORT CLAIMS ACT**<br><br>**<u>JURY TRIAL DEMANDED</u>** |

Pursuant to Rule 15, Federal Rules of Civil Procedure, plaintiff amends his complaint once without the need for leave of Court, and alleges as follows:

**PARTIES, JURISDICTION AND VENUE**

1. At all times material hereto plaintiff, TOMMY LaNIER ("Plaintiff or "LaNier") was and presently is a resident of the County of San Diego, State of California.

2. At all times material hereto defendant UNITED STATES OF AMERICA ("USA") was and presently is a sovereign government.

3. At all times material hereto defendant CITY OF CHULA VISTA ("City") was and presently is a municipality organized and existing under the laws of the State of California. City is located within the County of San Diego, State of California. Defendant City is one of the fund grantees and members of the HIDTA.

4. Plaintiff is informed and believes and thereon alleges that at all times material hereto defendant KEAN McADAM (McAdam") was and presently is an individual residing in the County of San Diego, State of California.

5. Plaintiff is informed and believes and thereon alleges that at all times material hereto defendant Californians For Drug Free Youth, Inc. (aka CADFY) was and presently is a corporation organized and existing under and by virtue of the laws of the State of California transacting business in the County of San Diego, State of California.

6. Federal subject matter jurisdiction exists in this case for the following reasons: This case was originally commenced in San Diego Superior Court. Defendant USA was added as a defendant by a DOE Amendment after the action was commenced, and thereafter removed by defendant USA to the U.S. District Court for the Southern District of California by means of a Notice of Removal filed on February 19, 2015 (Document #1), pursuant to 28 U.S.C. §§ 1441 and 1442. Section 1442(a)(1) provides for removal of cases commenced in a state court against the United States, its agencies and officers. Defendant USA is a party because of the actions of one of its instrumentalities, namely, the High Intensity Drug Trafficking Area Program ("HIDTA"), a federal program administered by the Office of the Executive Branch of the federal government. As a result, a claim against HIDTA is a claim against the USA and is properly removed from state to federal court. In addition, this action was properly removed to federal district court pursuant to 28 U.S.C. § 1441(a) because the district courts of the United States have original jurisdiction over cases which arise under the Constitution, treaties or laws of the United States. (28 U.S.C. § 1331.) Because the USA is a defendant by reason of the actions of the HIDTA, issues are

raised under the laws of the United States including potential issues of sovereign immunity and/or limited sovereign immunity. The HIDTA has capacity to sue and be sued under Rule 17(b)(A) of the Federal Rules of Civil Procedure as an unincorporated association which has violated substantive rights of plaintiff under United States law (Title VII).

7. Venue in the United States District Court for the Southern District of California is proper in this case pursuant to 28 U.S.C. § 1391(b)(1) and (2) because one or more defendants are residents of the state in which the district is located and a substantial part of the events giving rise to the claims occurred in this district.

**FACTS COMMON TO ALL CLAIMS FOR RELIEF**

8. HIDTA is a program run by the United States Office of National Drug Control Policy ("ONDCP"), which in turn is a component of the Executive Branch of the United States Government. (See, *e.g.,* 21 U.S.C. § 1501 *et seq.*, Citizens for Responsibility and Ethics in Washington v. Office of Administration, etc., 559 F.Supp.2d 9, 16 (D.D.C. 2008).) The HIDTA program is an instrumentality of the USA and provides assistance to federal, state and local enforcement agencies operating in areas determined to be critical drug trafficking regions of the United States. The purpose of the HIDTA program is to reduce drug trafficking and production in the United States by increasing cooperation, intelligence sharing, coordination and resource use among federal, state and local law enforcement agencies. HIDTA's function in various geographical regions of the USA, one of which is the San Diego-Imperial Valley region. HIDTA does not employ personnel directly, but rather is comprised of personnel contributed by participating law enforcement agencies. Federal funds are utilized and provided to "grantees" who hire personnel to work as a joint task force charged with implementing and accomplishing the goals of the HIDTA program. One of the major grantees of the San Diego-Imperial HIDTA is defendant City of Chula Vista which hired personnel jointly working in a common work office environment with other personnel. Another grantee under the Federal HIDTA Program

is CADFY, which was the actual lessee of the HIDTA office space and jointly controlled the office with HIDTA and City of Chula Vista.

9. The San Diego-Imperial HIDTA is overseen by a HIDTA Executive Board consisting of local, state and federal law enforcement officials who meet monthly. At all times material hereto, defendant McAdam, a payroll employee of the City of Chula Vista, acted as the Director of the San Diego-Imperial HIDTA and another payroll employee of the City of Chula Vista, Ralph Partridge ("Partridge"), acted as the Deputy Director of the San Diego-Imperial HIDTA. Under written HIDTA Policy Guidelines applicable to all grantees (including City of Chula Vista), City of Chula Vista was responsible for hiring employees, issuing contracts, managing property, and expending HIDTA program funds as necessary to carry out the grant activities under the general review of the HIDTA Executive Board. Under HIDTA Policy Guidelines, defendant City of Chula Vista was responsible for providing day to day administrative, financial and program management for the operations of the HIDTA. (See, HIDTA Policy Guidelines attached hereto as Exhibit A.) The HIDTA meets the definition of an unincorporated association because its members share a common purpose and share a common name ("HIDTA"); the HIDTA has its own letterhead which lists all of its Executive Board members; the HIDTA has a Director (McAdam), and a Deputy Director (Partridge), who had full control of the work office in which plaintiff worked; the office work signage stated "HIDTA" and/or "San Diego-Imperial High Intensity Drug Trafficking Area Program;" not the name of any other government member or entity; and, the claim or claims which plaintiff is suing on in this action arose directly out of the operation of the HIDTA work office. A true and correct copy of HIDTA business letterhead with the HIDTA seal is contained on Exhibit B attached hereto and incorporated herein, a letter dated 7/8/2013, from McAdam as "Director" of the San Diego-Imperial HIDTA to plaintiff LaNier purporting to state clarifications of HIDTA policies and procedures for the National Marijuana Initiative.

/ / /

10. As HIDTA grantees, defendants City of Chula Vista and CADFY receive fees for providing operational and management services from federal HIDTA funds equal to approximately three percent (3%) of the total funds received on an annual basis.

11. Plaintiff LaNier has worked virtually his entire career in the area of drug enforcement with an emphasis on disrupting major marijuana traffickers, suppliers and dealers. For over 33 years he worked directly for the federal government from which he retired in 2004 with a pension. Shortly thereafter, LaNier was asked by the National Director of HIDTA to continue his work in drug enforcement by becoming employed with the City of Chula Vista under the federal grant HIDTA program relating to disrupting major marijuana trafficking. Under this subprogram, denominated the National Marijuana Initiative ("NMI") and issued by the White House Office of National Drug Control Policy ("ONDCP"), LaNier became in charge of the NMI reporting to defendant McAdam. LaNier's position was specifically approved by the City Council of the City of Chula Vista. LaNier and McAdam were payroll employees of the City of Chula Vista. Plaintiff LaNier's job classification was "Director of NMI" for the San Diego-Imperial County regional HIDTA program.

12. In February 2007, plaintiff received a special thank you letter from John Walters, a cabinet level director with the Executive Office of the President, ONDCP, Washington, D.C., thanking plaintiff for his outstanding work on the 2006 National Marijuana Initiative accomplishments. In 2013, plaintiff was notified that he would be honored at a special red ribbon luncheon wherein he would receive a lifetime achievement award for accomplishments in marijuana drug trafficking enforcement.

13. In or about September 2013, plaintiff LaNier was informed by McAdam that LaNier had "falsified travel expenses" in some manner which was not specified to plaintiff. This travel was in connection with a business trip wherein plaintiff and other members of his team traveled to San Juan Puerto Rico, at the specific request of ONDCP, in early September 2013, to make an assessment of the current marijuana

impacts which the program was having. Prior to taking that trip, plaintiff LaNier submitted a written travel request on the proper CADFY form detailing all travel costs and laying out the purpose and itinerary of the trip with all expenses (plane fare, hotel costs, etc.) itemized and listed. This travel request was expressly signed off and authorized by two officers above plaintiff's level on July 29, 2013, one of whom was defendant McAdam and the other was the Deputy Di8rector of CADFY. (A true and correct copy of the signed off travel voucher request is attached hereto as Exhibit C and made a part hereof.) The questioning of the travel expenses occurred <u>after</u> plaintiff LaNier had complained to defendant McAdam that Partridge had engaged in a pattern of conduct creating an offensive and hostile work environment toward one or more female employees who were working under plaintiff LaNier in the office, as more particularly alleged hereinbelow.

14. At this juncture, plaintiff LaNier asked defendant McAdam why he was being questioned about the travel to Puerto Rico, given that (a) plaintiff had been specifically asked by ONDCP to travel to Puerto Rico and make the assessment for the Puerto Rico HIDTA, and (b) the travel voucher had been specifically approved in advance in writing by McAdam. The only response plaintiff ever obtained from defendant McAdam was that McAdam would "talk to Ralph" (referring to Partridge) about it. Nothing more specific was ever provided or stated by defendant McAdam.

15. On or about October 16, 2013, much to the chagrin and surprise to plaintiff, plaintiff was forced to resign as an employee of the City of Chula Vista. This was in response to receipt of a communication from defendant McAdam which informed plaintiff he had to either retire, resign or be fired. Shortly thereafter, plaintiff was informed that defendant McAdam stated to members of the Executive Board which oversaw the San Diego HIDTA operation that plaintiff LaNier had lied about/falsified the necessity for and/or expenses relating to the Puerto Rico trip. Plaintiff's last day at work for defendant City was October 22, 2013.

/ / /

16. The workplace conduct about which plaintiff had complained to defendant McAdam before the Puerto Rico trip, which plaintiff contends was sexually harassing and hostile, was created primarily by Partridge and stemmed form the following conduct:

a. A female employee in the HIDTA office working under plaintiff LaNier (Valerie Taylor) complained to plaintiff about the conduct of Partridge including the following:

b. While walking to a vacant office building one day to look at surplus office furniture, Partridge stated to Valerie Taylor that he (Partridge) would retire to Colorado. Valerie asked what Partridge's wife thought of that. Partridge replied that she (Lucy Partridge, Partridge's wife) would be dead in five years and that Valerie Taylor was going to love Colorado. In a prior conversation with Partridge, Valerie Taylor had mentioned to Partridge that her father's name was Ralph and that her brother's name was also Ralph, to which Ralph Partridge stated to Val Taylor that her next husband's name would also be "Ralph."

c. Defendant Partridge constantly spent unnecessary and unwanted time and gave unwanted attention to Valerie in her office; defendant Partridge constantly insisted on giving "fist bumps" to Valerie stating, "You need a hug from me." When Valerie would indicate that this type of conduct made her uncomfortable, Partridge would say on various occasions, "You are such a toughie," and continued doing the same offensive conduct.

d. Partridge constantly touched and messed with things on Valerie's desk and unplugged her computer in order that he would need contact with her in order to re-hook up the computer.

e. Partridge told Valerie on several occasions in various inappropriate ways how very "large" Partridge's penis was. Valerie let Partridge know this was extremely offensive and did not want him talking to her about such a subject.

/ / /

f. Partridge placed devices in Valerie's office that emitted a sound so that you could not tell exactly where it was coming from. Partridge also placed a similar device in the office of plaintiff LaNier's intel analyst, causing her to become upset that some foreign sound was coming from somewhere in her office. Plaintiff LaNier discovered the devices and gave them to Partridge who admitted to LaNier that they were his.

g. At one point, Partridge became enraged and yelled at LaNier (within the earshot of Val Taylor) "I'm sick of that fucking cunt."

17. All of the foregoing conduct on the part of Partridge was inappropriate, sexually harassing, and created a hostile work environment. Plaintiff LaNier's complaints to McAdam about the conduct of Partridge went unresponded to except for the comment that McAdam would "talk to Ralph about it," followed by plaintiff LaNier being falsely accused of lying about travel expenses and then being forced to resign as an employee. Plaintiff LaNier also complained to the Director of CADFY who worked in the HIDTA office (John Redman) regarding the hostile work environment toward CADFY's female payroll employee, Valerie Taylor. Mr. Redman's response was that he would "talk to Kean" (referring to Kean McAdam) about the problem.

18. At the time that plaintiff LaNier was forced to resign as an employee of defendant City, plaintiff received a salary of $115,000 per annum, medical/health insurance benefits, and pension benefits.

19. On April 14, 2014, plaintiff LaNier filed a Claim For Damages against defendant City. A true and correct copy of said claim is attached hereto as Exhibit D and made a part hereof. More than forty-five (45) days has passed without the City formally accepting or denying the plaintiff's claim as a result of which the claim is deemed to be denied in law.

20. On April 9, 2015, plaintiff submitted an Federal Administrative Claim under the Federal Tort Claims Act to the Office of the General Counsel, Administrative Office of the United States Court in Washington, D.C. Said claim was submitted

pursuant to 28 U.S.C. §§ 1346(d), 2401(b), 2671-2680 and 28 CFR Part 14. A true and correct copy of said Federal Administrative Claim is attached hereto as Exhibit E and made a part hereof.

**FIRST CLAIM FOR RELIEF**

**(Defamation — Against Defendants Kean McAdam and City of Chula Vista)**

21. Plaintiff incorporates and realleges all prior paragraphs of this complaint the same as though set forth in full.

22. All actions alleged by defendant McAdam in this cause of action were within the course and scope of his employment by defendant City and were ratified by defendant City, with knowledge of the actions of McAdam.

23. At all times material hereto, plaintiff LaNier had an impeccable reputation in the drug enforcement and law enforcement community, both regionally and nationwide, for integrity, honesty, AND trustworthiness, among other qualities, which reputation was built up over a course of many, many years.

24. Plaintiff LaNier is informed and believes and thereon alleges that on or about October 16, 2013, defendants McAdam and City slandered and defamed plaintiff LaNier by stating and publishing to Executive Board members overseeing the San Diego HIDTA operation, including but not limited to Executive Board member Val Jimenez, false, unprivileged and defamatory facts; namely, that plaintiff LaNier had falsified his travel voucher and falsified or lied about travel expenses incurred with regard to a business trip to Puerto Rico. The false statements of fact were understood by all who heard as referring specifically to plaintiff LaNier, and were understood by all who heard as accusing plaintiff LaNier of dishonest and unprofessional conduct connected with his business and employment.

25. All of the false statements of fact had a tendency to disparage qualities that were peculiarly required for plaintiff LaNier's business, trade and/or profession and, thus, constituted slander *per se* within the meaning of Cal.Civ.Code § 46. (See, also, Smith v. Maldanado, 72 Cal.App.4th 637 (1999).) All such statements as hereinabove

alleged of and concerning LaNier were statements of fact, not statements of opinion, because they implied knowledge of facts which led to the false conclusions stated by the defendants and were and are susceptible to being proven objectively true or false. (Gill v. Hughes, 27 Cal.App.3d 1299 (1991); Terry v. Davis Community Church, 131 Cal.App.4th 1534 (2005).)

26. The defendants who made the defamatory statements as hereinabove alleged had no reasonable ground for believing the statements to be true. Specifically, there was no reasonable basis for disputing the authenticity and veracity of the travel voucher requests submitted by plaintiff LaNier, which had been approved in writing by defendant McAdam prior to the trip, and there was no reasonable basis to dispute that the Puerto Rico trip was requested and approved by higher authorities. Accordingly, all such defamatory statements were completely unprivileged. (Sanborn v. Chronicle Publishing Co., 18 Cal.3d 406, 413 (1976); Brewer v. Second Baptist Church of Los Angeles, 32 Cal.2d 791, 799 (1948).)

27. By reason of the foregoing wrongful defamatory conduct of defendants as hereinabove alleged, which defamatory statements were and are *per se* slanderous and defamatory, plaintiff LaNier has been damaged in his general reputation. In addition, as a direct and proximate result of the foregoing defamatory statements made by defendants, plaintiff LaNier has incurred special damages in the form of lost wages and benefits from employment as well as damages for serious emotional distress. Plaintiff is informed and believes and thereon alleges that the amount of collective general and special damages is the sum of at least $500,000, the exact amount to be proven and established at the time of trial.

28. The foregoing conduct of defendant McAdam was and is wrongful within the meaning of Cal.Civ.Code § 3294 in that the defamatory statements were made with a conscious or reckless disregard for the rights of plaintiff LaNier, amounting to "despicable conduct" within the meaning of Cal.Civ.Code § 3294. By reason thereof, plaintiff is entitled to recover punitive and exemplary damages to punish defendant

McAdam for such wrongful conduct and deter similar conduct in the future in an amount to be proven and established at trial.

## SECOND CLAIM FOR RELIEF

## (Retaliation — vs. USA, City of Chula Vista and CADFY Under California FEHA)

29. Plaintiff incorporates and realleges all prior paragraphs of this complaint the same as though set forth in full.

30. Under the California Fair Employment and Housing Act ("FEHA"), it is an unlawful employment practice for any employer to discharge a person from employment or to discriminate against a person in regard to the terms and conditions of employment based upon gender. (Cal.Govt.Code § 12940(a).) The same statute also prohibits employers from retaliating against employees for engaging in protected activity — *i.e.*, discharging, expelling or otherwise discriminating against any person because that person has opposed any practices forbidden under FEHA. (Joaquin v. City of Los Angeles, 202 Cal.App.4th 1207, 1219 (2012).)

31. Presumptive retaliation occurred under the facts alleged in this case because plaintiff LaNier was qualified for his employment position; LaNier was performing his duties competently in that position; LaNier suffered an adverse employment action; and additional circumstances as alleged hereinabove strongly imply or suggest discriminatory or retaliatory motive against LaNier. Retaliatory motives against plaintiff LaNier were a substantial factor in the decision to force LaNier to resign his position working for the defendant City. (Marlo v. United Parcel Service, Inc., 890 F.Supp.2d 1243, 1244-1245 (C.D. Cal. 2013) [applying California law].)

32. At all times material hereto, the actions of McAdam and Partridge were undertaken as Director and Deputy Director, respectively, of the Executive Board overseeing all actions of the San Diego HIDTA and as supervisory payroll employees of the City of Chula Vista. McAdam and Partridge had actual and/or implied authority

to take the wrongful actions which are alleged herein. The USA and City of Chula Vista were aware, actually or by imputation, of the offensive conduct and hostile work environment and failed to exercise reasonable care to prevent and promptly correct sexually harassing behavior complained about by plaintiff LaNier; LaNier did not fail to take advantage of preventive or corrective opportunities provided by defendant City; and, tangible adverse action was taken against plaintiff LaNier in retaliation for complaining about the offensive conduct and the hostile work environment.

33. As a direct and proximate result of the unlawful retaliation alleged hereinabove, plaintiff has suffered economic damages as well as emotional distress damages in an amount which is at least the sum of $500,000, the exact amount to be proven and established at trial.

## <u>THIRD CLAIM FOR RELIEF</u>

### (Retaliation — vs. USA, City of Chula Vista and CADFY under Title VII)

34. Plaintiff incorporates and realleges all prior paragraphs of this First Amended Complaint the same as though set forth in full.

35. The action of defendant USA/HIDTA and defendant City of Chula Vista in terminating plaintiff LaNier in retaliation for complaining about sexual harassment and hostile work environment relating to a female employee working in the HIDTA office constituted a blatant violation of Title VII, 42 U.S.C. § 2000(e)-3(a), and requires remedial action by the Court if plaintiff's right to be free of this reprisal is to be vindicated.

36. By reason of this wrongful action on the part of defendant USA/HIDTA, defendant City of Chula Vista and defendant CADFY, as alleged hereinabove, plaintiff has suffered economic damages and emotional distress damages in the amount of at least $500,000, the exact amount to be proven and established at trial.

37. But for the wrongful actions of defendants USA/HIDTA, City of Chula Vista (acting through defendant McAdam as the HIDTA Director and supervisory

payroll employee of the City of Chula Vista) and CADFY, unlawful retaliation against plaintiff LaNier would not have occurred. (University of Texas Southwestern Medical Center v. Nassar, 133 S.Ct. 2517 (2013).)

## FOURTH CLAIM FOR RELIEF

**(Claim Under Federal Tort Claims Act — vs. Defendant USA)**

38. Plaintiff incorporates and realleges all prior paragraphs of this First Amended Complaint the same as though set forth in full. Specifically, plaintiff herein reiterates all allegations respecting the conduct and involvement of defendant USA/HIDTA as hereinabove alleged in this First Amended Complaint.

39. Based on the conduct hereinabove alleged, plaintiff makes a claim specifically under the Federal Tort Claims Act, 28 U.S.C. §§ 1346, 2401-2680, and specifically alleges that the conduct complained about of a retaliatory nature against plaintiff gives rise to a claim under the Federal Tort Claims Act. Plaintiff further specifically alleges that the conduct alleged by defendant USA/HIDTA in this First Amended Complaint does not fall under the discretionary function exception to liability under the FTCA because a federal statute specifically prescribes a course of action or conduct to be followed and does not involve an element of judgment or choice; and, even if the challenge conduct involves an element of judgment or choice, it is not grounded in social, economic or political policy. By reason thereof, the discretionary function exception to federal government liability under the FTCA does not apply. Furthermore, the discretionary function exception was not intended to shield against federal agents/employees creating a hostile work environment or sexually harassing a co-worker.

WHEREFORE, plaintiff prays for judgment as follows:

(1) General and special damages in the amount of at least $500,000, the exact amount to be proven and established at the time of trial;

(2) For emotional distress damages in an amount to be proven and established at trial;

(3) On the Second Claim for Relief, for recovery of an award of reasonable attorney's fees pursuant to Cal.Govt.Code § 12965(b);

(4) For costs of suit incurred herein; and

(5) For such other and further relief as the Court deems just and proper.

WAGNER, LYNN & LUJAN

Dated: May 4, 2015

/s/ *M. Richardson Lynn, Jr.*
M. Richardson Lynn, Jr., Attorneys for Plaintiff, Tommy LaNier

## JURY TRIAL DEMAND

Plaintiff demands a jury trial.

WAGNER, LYNN & LUJAN

Dated: May 4, 2015

/s/ M. Richardson Lynn, Jr.
M. Richardson Lynn, Jr., Attorneys for Plaintiff, Tommy LaNier