Penelope M. Deihl, State Bar No. 167040
David J. Vendler, State Bar No. 146528
Laurie N. Stayton. State Bar No. 238026
**MORRIS POLICH & PURDY LLP**
1055 West Seventh Street, 24th Floor
Los Angeles, California 90017
Telephone:(213) 891-9100
Facsimile: (213) 488-1178

Attorneys for Defendant,
KEAN McADAM

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| TOMMY LaNIER,<br><br>Plaintiff,<br><br>vs.<br><br>UNITED STATES OF AMERICA, CITY OF CHULA VISTA, a Municipality, KEAN McADAM, an individual; CALIFORNIAS FOR DRUG FREE YOUTH, INC., a California corporation aka CADFY,<br><br>Defendants. | **Case No.: 3-15-CV0360 BAS BLM**<br><br>(Removed from Superior Court of California, County of San Diego, Case No. 37-2014-00019774-CU-DF-CTL)<br><br>**JOINT STATEMENT OF UNDISPUTED MATERIAL FACTS REGARDING DEFENDANT KEAN MCADAM'S MOTION FOR SUMMARY JUDGMENT**<br><br>**Date: December 12, 2016**<br>**Ctrm.: 4B**<br>**Judge: Hon. Cynthia A. Bashant**<br><br>**NO ORAL ARGUMENT UNLESS REQUESTED BY THE COURT**<br><br>Complaint Filed: June 17, 2014<br>Trial Date: August 22, 2017 |

**TO THIS HONORABLE COURT, TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that consistent with Paragraph 4.F of the Court's Standing Order for Civil Cases and Local Civil Rule 7.1(f)(1), defendant Kean McAdam ("McAdam") and plaintiff Tommy LaNier have met and conferred and

hereby submit the following Joint Statement of Undisputed Material Facts regarding Kean McAdam's Motion for Summary Judgment. (Docket No. 42).

Dated: December 5, 2016 **MORRIS POLICH & PURDY LLP**

By: */s/ Laurie N. Stayton*
Penelope M. Deihl
David J. Vendler
Laurie N. Stayton
Attorneys for Defendant
KEAN McADAM

**M. RICHARDSON LYNN, JR., A PROFESSIONAL CORPORATION**

Dated: December 5, 2016 By: */s/ M. Richardson Lynn, Jr.*
M. Richardson Lynn, Jr.
Attorney for Plaintiff
TOMMY LANIER

# JOINT STATEMENT OF UNDISPUTED MATERIAL FACTS

| No. | Fact | Supporting Evidence | Plaintiff's Response |
|---|---|---|---|
| 1. | On June 17, 2014, Tommy LaNier filed a verified complaint for defamation and unlawful retaliation. | LaNier's Complaint, attached to Laurie Stayton's Declaration (Stay Decl) as Exhibit A. | Agree. |
| 2. | On May 04, 2015, LaNier filed his First Amended Complaint (FAC). | Docket 9 | Agree. |
| 3. | The sole remaining defendants are Kean McAdam and the City of Chula Vista. | Docket 9 | Agree. |
| 4. | In LaNier's verified Complaint and FAC, LaNier alleges that McAdam defamed him before the SDI-HIDTA Executive Board by telling its members that "plaintiff LaNier had falsified his travel voucher and falsified or lied about travel expenses incurred with regard to a business trip to Puerto Rico." | LaNier's Complaint ¶20; Docket 9, ¶15 | Agree. |
| 5. | In LaNier's verified Complaint and FAC, LaNier alleges these statements by McAdam were not true, because LaNier "(a) had been specifically asked by | LaNier's Complaint ¶11; Docket 9, ¶14 | Agree. |

| No. | Fact | Supporting Evidence | Plaintiff’s Response |
|---|---|---|---|
| | ONDCP [the Office of National Drug Control Policy] to travel to Puerto Rico and make the assessment for the Puerto Rico HIDTA, and (b) the travel voucher had been specifically approved in advance in writing by McAdam.” | | |
| 6. | On June 8, 2015, Kean McAdam filed an Answer denying all of LaNier’s claims and allegations. | Docket 16 | Agree. |
| 7. | For his tenth, twenty-sixth and twenty-eighth affirmative defenses, McAdam included truth and privilege under California *Civil Code* sections 47(a), (b), (c) and (d). | Docket 16 | Agree. |
| 8. | The HIDTA Program is administered through the Office of National Drug Control Policy (“ONDCP”), a component of the Executive Office of the President of the United States. | McAdam’s Request for Judicial Notice of “HIDTA Program Policy and Budget Guidance”, sections 1.1 & 2.1.1. | Based on the below, and based upon the failure of Defendant to respond to discovery, Plaintiff disagrees that this is an “undisputed fact.”<br><br>This is not a statement of “fact” but rather merely a quote from a HIDTA |

| No. | Fact | Supporting Evidence | Plaintiff's Response |
|---|---|---|---|
| | | | manual. Defendant cannot hide behind HIDTA or its manual as HIDTA is not a "public entity" under California law, and California Evidence Code 1040 offers no privilege or protection from disclosing the activities during any so-called "closed session."<br><br>In another case, in determining if the police manual for the City of Chula Vista Police Department regulated that department, the Court stated: "Here, however, the manual comes not from the city but from a department of the city. We are provided no authority for the position that the police department is a 'public entity' within the meaning of the section. Evidence Code section 200 defines a public entity as "a nation, state, county, city and county, city, district, |

| No. | Fact | Supporting Evidence | Plaintiff's Response |
|---|---|---|---|
| | | | public authority, public agency, or any other political subdivision or public corporation, whether foreign or domestic." While 'public agency' may be a somewhat vague term, its use as a part of a definition of 'public entity' must contemplate a body with some degree of sovereignty. Each of the listed entities as well as the classification found in the concluding language, 'or any other political subdivision or public corporation,' describes an independent body politic with sovereignty and not a department or office within the entity. To construe 'public agency' any other way would be to destroy the concept of "entity." We note, too, the Law Revision Commission comment to section 811.2 of the Government Code, which defines 'public entity' in a similar |

| No. | Fact | Supporting Evidence | Plaintiff's Response |
|---|---|---|---|
| | | | fashion, states the definition 'is intended to include every kind of political or governmental entity in the state.' None of the definitions of 'public agency' we have been able to find would include a department of a city as such. We must conclude the police department is merely an integral part of a public entity and not an entity itself." *Vallas v. City of Chula Vista*, 56 Cal App. 3d 382, 387 (1976); *see also*, Cal. Evid. Code 200.<br><br>The holding of *Vallas v. City of Chula Vista* applies to the HIDTA Program Policy and Budget Guidance repeatedly relied on by Defendant.<br><br>This Court has previously held that HIDTA is not a legal entity and generally lacks the authority to hire employees. *See*, Order Granting |

| No. | Fact | Supporting Evidence | Plaintiff's Response |
|---|---|---|---|
| | | | United States of America's Motion to Dismiss, Docket No. 34 at p. 14, lines 22-25. It is nothing more than a "regional program," and is not a legal entity. *Id. a*t p. 14, lines 4-25. |
| 9. | The mission of the HIDTA Program is to disrupt the market for illegal drugs in the United States by assisting federal, state, and local law enforcement entities participating in the HIDTA Program to dismantle and disrupt drug trafficking organizations. | McAdam's Request for Judicial Notice of "HIDTA Program Policy and Budget Guidance", section 2.2.1 | Disagree. See response to No 8 above. |
| 10 | The HIDTAs consist of coalitions of federal, state, local, and tribal law enforcement agencies from a specific geographic area that have joined together to apply for Federal grants to facilitate certain specific drug control goals. The Director of the ONDCP designates specific areas in the | McAdam's Request for Judicial Notice of "HIDTA Program Policy and Budget Guidance", section 2.3.3 | Disagree. See response to No 8 above. |

| No. | Fact | Supporting Evidence | Plaintiff's Response |
|---|---|---|---|
| | United States as High Intensity Drug Trafficking Areas. | | |
| 11. | At the national level, it is the ONDCP which provides policy direction and guidance and grant administration to the HIDTA programs. | McAdam's Request for Judicial Notice of "HIDTA Program Policy and Budget Guidance", section 2.3.2 | Disagree. See response to No 8 above. |
| 12. | ONDCP also provides HIDTA program funds to state and local entities, such as cities, tribal agencies, institutions of higher education, or non-profit organizations to act as the grantee(s) for agencies participating in the HIDTA program. The entity receiving HIDTA program funds is accountable for the use of those funds and must comply with all applicable Federal statutes and regulations governing Federal grants | McAdam's Request for Judicial Notice of "HIDTA Program Policy and Budget Guidance", section 3.3 | Disagree. See response to No 8 above. |
| 13. | The ONDCP also assures that the overall program policy is consistent with the National Drug Control Strategy, that the Program operates in an | McAdam's Request for Judicial Notice of "HIDTA Program Policy and Budget Guidance", section 2.3.2 | Disagree. See response to No 8 above. |

| No. | Fact | Supporting Evidence | Plaintiff's Response |
|---|---|---|---|
| | effective and efficient manner; and that all HIDTA participants operate in compliance with program policy. | | |
| 14. | At the local level, governance of regional HIDTAs is conducted by Executive Boards composed of federal law enforcement leaders and state, local, and tribal law enforcement leaders. | McAdam's Request for Judicial Notice of "HIDTA Program Policy and Budget Guidance", section 2.3.2 | Disagree. See response to No 8 above. |
| 15. | A HIDTA Executive Board is responsible for: (1) Providing direction and oversight in establishing and achieving the goals for the designated HIDTA; (2) Managing funds; (3) Reviewing and approving all funding proposals consistent with the overall objective of the HIDTA program, including the annual budget submissions. (4) Reviewing and approving all reports to the Director of ONDCP for the designated HIDTA; and (5) Overseeing the conduct of internal reviews. | McAdam's Request for Judicial Notice of "HIDTA Program Policy and Budget Guidance" section 3.4.2 | Disagree. See response to No 8 above. |

| No. | Fact | Supporting Evidence | Plaintiff's Response |
|---|---|---|---|
| 16. | Each Regional Executive Board is responsible for selecting a Regional HIDTA Director. | McAdam's Request for Judicial Notice of "HIDTA Program Policy and Budget Guidance", section 3.4.7. | Disagree. See response to No 8 above. |
| 17. | The HIDTA Director is responsible for the successful implementation of the Executive Board's strategy and policies. | McAdam's Request for Judicial Notice of "HIDTA Program Policy and Budget Guidance", section 3.5.1 | Disagree. See response to No 8 above. |
| 18. | The principal responsibilities of the HIDTA Director include: (1) Providing day-to-day administrative, financial and program management for the operations of the HIDTA; (2) Facilitating and encouraging the development of innovative approaches to drug law enforcement; (3) Ensuring that HIDTA initiatives are in compliance with the HIDTA program requirements; and (4) Advising the Executive Board concerning the performance of HIDTA initiatives. | McAdam's Request for Judicial Notice of "HIDTA Program Policy and Budget Guidance", section 3.5.1 | Disagree. See response to No 8 above.<br><br>Further, notwithstanding what the "HIDTA Program Policy and Budget Guidance" states, there were actual informal policies and operating procedures practiced that did not comply with the statements contained in the "HIDTA Program Policy and Budget Guidance." See e.g. Exhibits 4 and 5 attached to the Declaration of M. Richardson Lynn, Jr. (Excerpts of Depo. Transcript of Norman |

| No. | Fact | Supporting Evidence | Plaintiff's Response |
|---|---|---|---|
| | | | "Scott" Hinson, and of John Redman). |
| 19. | In California, the Southwest Border HIDTA is composed of San Diego and Imperial counties, commonly referred to as "SDI-HIDTA." | Kean McAdam Declaration ("Decl.") ¶8 | Agree. |
| 20. | Funds are provided to the SDI-HIDTA under the HIDTA Grant Program administered by the ONDCP to supplement and improve the collective efforts of local, state and federal law enforcement to interdict, investigate, and prosecute those who traffic in drugs. | McAdam Decl ¶9 | Agree. |
| 21. | At all times relevant, three agencies were designated to act as Fiscal Agents (also called fiduciaries) for the SDI-HIDTA program: (1) the San Diego Sheriff's Department, (2) the Chula Vista Police Department and (3) Californians for Drug-Free Youth (CADFY). | McAdam Decl ¶10 | Agree. |

| No. | Fact | Supporting Evidence | Plaintiff's Response |
|---|---|---|---|
| 22. | In or about 2001, the National Marijuana on Public Lands Initiative ("NMPL"), later named the National Marijuana Initiative ("NMI"), was formed, which is a HIDTA-funded Law Enforcement Initiative that assists in the detection, deterrence, and disruption of domestic marijuana cultivation and trafficking by coordinating investigations and interdiction operations combining federal, state, and local law enforcement. From 2001 to 2015, the SDI-HIDTA office housed the NMPL/NMI. | McAdam Decl ¶11 | Agree. |
| 23. | On December 31, 2003, LaNier retired from the Federal Government and started working as the Director of the NMPL/NMI, which was a position nominally provided through the City of Chula Vista, but entirely dependent upon HIDTA grant funding. | McAdam Decl ¶12 | Agree in part and disagree in part. LaNier was NMI Director before he became a Chula Vista employee. Disagree that the position was "nominally provided through City of Chula Vista. City of Chula Vista was fully responsible for LaNier as its employee. |

| No. | Fact | Supporting Evidence | Plaintiff's Response |
|---|---|---|---|
| 24. | LaNier was required to comply with ONDCP's HIDTA Program Policy and Budget Guidance. | McAdam Decl ¶13 | Disagree.<br><br>LaNier was required to comply with the "grantee's" policies. "HIDTA Program Policy and Budget Guidance", section 3.4.5<br><br>Further, evidence shows that the "HIDTA Program Policy and Budget Guidance" was not always followed by LaNier's supervisors and the parties notwithstanding what the "HIDTA Program Policy and Budget Guidance" may state, there were actual informal policies and operating procedures practiced that did not comply with the statements contained in the "HIDTA Program Policy and Budget Guidance." See e.g. Exhibits 4 and 5 attached to the Declaration of M. Richardson Lynn, Jr. (Excerpts of Depo. |

| No. | Fact | Supporting Evidence | Plaintiff's Response |
|---|---|---|---|
| | | | Transcript of Norman "Scott" Hinson, and of John Redman). LaNier had approval for his trip to Puerto Rico although his supervisors may have deviated from the the "HIDTA Program Policy and Budget Guidance." |
| 25. | At all times relevant, LaNier was considered an "at-will" employee. | LaNier Deposition Transcript pp.165:18-166:4 & Exhibit 1 to deposition, both attached to Stay Decl as Exh. B. | Agree. |
| 26. | In 2006, McAdam was selected by the Executive Board of Directors to act as the Deputy Director for the SDI-HIDTA. | McAdam Decl ¶3 | Agree. |
| 27. | In 2009, McAdam was selected by the Executive Board of Directors to act as the Director for the SDI-HIDTA, a position he still holds today. | McAdam Decl ¶4 | Agree. |
| 28. | As the Deputy Director and Director, McAdam was also an employee of the City of Chula Vista and his salary was also entirely | McAdam Decl ¶5 | Agree that McAdam was a payroll employee of the City of Chula Vista with a job title of Director of the San |

| No. | Fact | Supporting Evidence | Plaintiff's Response |
|---|---|---|---|
| | dependent on HIDTA funding. | | Diego/Imperial HIDTA program. |
| 29. | The SDI-HIDTA Executive Board's (formerly known as CBAG) "Position Announcement" for the Director Position, provided, in part, as follows:<br><br>The individual selected will be responsible to, and will be the principal advisor for, the Executive Committee of the California Border Alliance Group regarding HIDTA management issues confronting Law Enforcement Agencies pertaining to drug trafficking in the Southern District of California. Will have comprehensive financial management, organization, public relations, personnel oversight responsibilities for the San Diego/Imperial Counties HIDTA, and will participate in the formulation of the National Drug | McAdam Decl ¶6 and Exhibit A thereto. | The document speaks for itself and is irrelevant. |

| No. | Fact | Supporting Evidence | Plaintiff's Response |
|---|---|---|---|
| | Control Strategy and HIDTA Program Guidance. Will manage the administration of HIDTA initiatives and as such, conduct studies, develop policies and procedures and develop plans to enhance HIDTA program. Provides oversight function in the multiple Federal, State and Local Law Enforcement Agency sponsored Initiatives, including Military support in the accomplishment of HIDTA goals and objectives as directed by the Office of National Drug Control Policy. Requires significant commitment of time and energy to include occasional evening and weekend meetings/conferences; and overnight travel requirements. Participation in many coordinating meetings, representing CBAG with law enforcement; community groups; | | |

| No. | Fact | Supporting Evidence | Plaintiff's Response |
|---|---|---|---|
| | and treatment and prevention in Drug Demand Reduction efforts. | | |
| 30. | McAdam is required to comply with ONDCP's HIDTA Program Policy and Budget Guidance. | McAdam Decl ¶7 and Exhibit B thereto. | Disagree. Evidence shows that the "HIDTA Program Policy and Budget Guidance" was not always followed by LaNier's supervisors and the parties notwithstanding what the "HIDTA Program Policy and Budget Guidance" states, there were actual informal policies and operating procedures practiced that did not comply with the statements contained in the "HIDTA Program Policy and Budget Guidance." See e.g. Exhibits 4 and 5 attached to the Declaration of M. Richardson Lynn, Jr. (Excerpts of Depo. Transcript of Norman "Scott" Hinson, and of John Redman). LaNier had approval for his trip to Puerto Rico although his supervisors may have deviated from the the |

| No. | Fact | Supporting Evidence | Plaintiff's Response |
|---|---|---|---|
| | | | "HIDTA Program Policy and Budget Guidance." Further , it is the "Grantees' who must comply and are accountable for the use of HIDTA funds, "HIDTA Program Policy and Budget Guidance", section 3.4.5 |
| 31. | On July 22, 2013, LaNier submitted a travel authorization request to McAdam to travel to the Puerto Rico / Virgin Islands HIDTA (PRVI-HIDTA) regional office to assess its marijuana eradication, investigation program, and training needs. | McAdam Decl. ¶14 | Agree. |
| 32. | LaNier told McAdam that Mike Gottlieb (Gottlieb), the ONDCP National HIDTA Director, had specifically requested him to travel to Puerto Rico and make the assessment for the PRVI-HIDTA. | McAdam Decl. ¶15 | Disagree. LaNier Decl. at ¶¶4-7 |
| 33. | LaNier also requested Val Taylor, his assistant, and John Redman, the director of | McAdam Decl. ¶17 | Agree. |

| No. | Fact | Supporting Evidence | Plaintiff's Response |
|---|---|---|---|
| | the Californians for Drug Free Youth ("CADFY"), attend the Puerto Rico trip. | | |
| 34. | The ONDCP's HIDTA Program Policy and Budget Guidance' provide that HIDTA funds cannot be used for "travel that does not clearly benefit the HIDTA program." | McAdam's Request for Judicial Notice of "HIDTA Program Policy and Budget Guidance", section 6.9 | Disagree. See response to No 8 above. |
| 35. | Based on LaNier's express representation that Gottlieb had specifically requested that he travel to Puerto Rico, McAdam executed LaNier's travel authorization form. | McAdam Decl. ¶16 | Disagree. This was never expressed to LaNier. Lanier Decl. ¶¶ 4-8. |
| 36. | On or about September 6, 2013, the SDI-HIDTA Deputy Director, Ralph Partridge, advised McAdam that ONDCP was "surprised" that LaNier was in Puerto Rico due to budget constraints. | McAdam Decl. ¶18 | Disagree. LaNier has no knowledge of this alleged fact. |
| 37. | McAdam and Partridge then had a conference call with Gottlieb, Darren Neely and Shannon Kelley of | McAdam Decl. ¶19 | Disagree. LaNier has no knowledge of this alleged fact. |

| No. | Fact | Supporting Evidence | Plaintiff's Response |
|---|---|---|---|
| | ONDCP to discuss the Puerto Rico trip. | | |
| 38. | Gottlieb, Neely and Kelley all denied requesting that LaNier travel to Puerto Rico. | McAdam Decl. ¶20 | Disagree. Lanier Decl. ¶¶ 4-8. |
| 39. | After LaNier returned from Puerto Rico, LaNier advised McAdam that the Central California HIDTA Director, Bill Ruzzamenti, approved LaNier to bring Ruzzamenti's task force commander, Roy Giogri, on a subsequent trip to Puerto Rico. | McAdam Decl. ¶21 | Disagree. Before LaNier went to Puerto Rico Ruzzamenti told LaNier that Giorgi could not go on that trip but could possibly go on a later trip. |
| 40. | On or about September 20, 2013, McAdam phoned Ruzzamenti and Ruzzamenti denied telling LaNier that Roy Giogri was authorized to travel to Puerto Rico for the subsequent NMI training trip. | McAdam Decl. ¶22 | Disagree. LaNier has no knowledge of this alleged fact. This is directly contradicted by Ruzzamenti deposition testimony. |
| 41. | On October 16, 2013, the San Diego-Imperial Executive Board conducted its monthly board meeting. After the general session of the meeting, an "Executive Session" – also called a *closed* | McAdam Decl. ¶23 and Exhibit "C" attached thereto. | Agree. |

| No. | Fact | Supporting Evidence | Plaintiff's Response |
|---|---|---|---|
| | *session* - was conducted. | | |
| 42. | An Executive Session of a HIDTA board meeting is a necessary tool for protecting and advancing the best interests of the HIDTA program. | McAdam Decl. ¶24. | Disagree and irrelevant. |
| 43. | Executive sessions provide a venue for handling issues involving privileged information and matters of a private nature. | McAdam Decl. ¶25 | Disagree. There is no privilege for HIDTA "Executive Sessions." Cal. Evid. Code §§200 (HIDTA is not a "public entity,") and 1040; *Vallas v. City of Chula Vista*, 56 Cal App. 3d 382, 387 (1976) |
| 44. | Present at the closed Executive Session included the following Executive Board Voting Members:<br><br>1. **The Honorable Laura E. Duffy -** United States Attorney, Southern District of California<br>2. **Anthony Orlando -** Assistant Special Agent in Charge, Internal Revenue Service, Criminal Investigation | McAdam Decl. ¶26 | Disagree due to failure of Defendant to disclose. *See* Rule 56(d) Decl. of M. Richardson Lynn, Jr. at ¶¶ 6, 7 where defendant refused to answer questions about the closed session wrongfully invoking Cal. Evid. Code §§ 1040 and 200. *See also*, McAdam Decl. Exhibit "D" where ballots have been redacted to remove all names. Also, |

| No. | Fact | Supporting Evidence | Plaintiff's Response |
|---|---|---|---|
| | 3. **David Bejarano** - Chief, Chula Vista Police Department<br>4. **Daphne Hearne** - Special Agent in Charge, Federal Bureau of Investigation<br>5. **Derek Benner** - Special Agent in Charge, U.S. Immigration & Customs Enforcement<br>6. **Paul Beeson** - Chief Patrol Agent, U.S. Border Patrol, San Diego Sector<br>7. **William R. Sherman** - Special Agent in Charge, Drug Enforcement Administration,<br>8. **Val Jimenez** - Special Agent in Charge, California Department of Justice<br>9. **Ray Loera** - Sheriff, Coroner, Marshal, Imperial County<br>10. **Steven Walter** - Deputy District Attorney, San Diego County<br>11. **Miguel Colon Jr.** - Chief, Imperial Police Department,<br>12. **William M.** | | Irrelevant as to who the board members are. |

| No. | Fact | Supporting Evidence | Plaintiff's Response |
|---|---|---|---|
| | **Lansdowne -** Chief of Police, San Diego Police Department | | |
| 45. | McAdam, a non-voting board member, was invited to join the closed Executive Session to discuss personnel issues involving LaNier. | McAdam Decl. ¶27 | Disagree due to failure of Defendant to disclose. Irrelevant. |
| 46. | Following the closed Executive Session, the general session was reconvened and all twelve members of the Executive Board voted unanimously to provide LaNier with the option to retire, quit or be terminated from the HIDTA program. Val Jimenez later requested to abstain from the vote because he was interested in applying for the NMI position. | McAdam Decl. ¶30 and Exh. D. | Disagree due to failure of Defendant to disclose. Irrelevant.<br><br>Agree that McAdam was present for the Closed Session. |
| 47. | LaNier chose retirement. | McAdam Decl. ¶31 | Agree, but with proviso LaNier had no choice to stay employed. |
| | **Plaintiff's facts** | **Supporting evidence** | **Defendant's response** |

| No. | Fact | Supporting Evidence | Plaintiff's Response |
|---|---|---|---|
| 48. | LaNier was formerly a payroll employee of the City of ChulaVista working in the office of the San Diego/Imperial High Intensity Drug Trafficking Area Program (HIDTA). LaNier's position was Director of the National Marijuana Initiative ("NMI"). LaNier held this position from January 1, 2004, until he was abruptly terminated on October 16, 2013, following a HIDTA Executive Board closed session meeting. Prior to 2004, for a number of years, LaNier performed the same job and same function (Director of the NMI) as a payroll employee of the United States Forestry Service. | LaNier Decl. ¶2 | OBJECTION - Irrelevant and immaterial.<br><br>It remains undisputed that LaNier's own deposition admissions, coupled with the undisputed evidence, establish that LaNier represented to McAdam that Gottlieb had specifically requested that he travel to Puerto Rico and that representation was false. *See LaNier's deposition testimony at pp. 271:9-272, 524:20 to 525:11, attached to Stay Decl Reply.* |
| 49. | During the course of LaNier's lengthy career in the positions describe above, he received numerous accolades and commendations for his job performance from a variety of sources including the United States Senate, the United States House of | LaNier Decl. ¶3 | OBJECTION - Irrelevant and immaterial. LaNier's work history and alleged accolades are irrelevant to LaNier's defamation claim against McAdam and the issues presented in the Motion for Summary Judgment. |

| No. | Fact | Supporting Evidence | Plaintiff's Response |
|---|---|---|---|
| | Representatives, the California Senate, the California Assembly, and a Lifetime Achievement Award from the San Dieguito Alliance for Drug Free Youth, the latter of which award was bestowed on 10/18/2013 (2 days after his termination as Director of the NMI). | | It remains undisputed that LaNier's own deposition admissions, coupled with the undisputed evidence, establish that LaNier represented to McAdam that Gottlieb had specifically requested that he travel to Puerto Rico and that representation was false. *See LaNier's deposition testimony at pp. 271:9-272, 524:20 to 525:11, attached to Stay Decl Reply.* |
| 50. | As part of LaNier's job as the NMI Director, LaNier frequently and consistently traveled for business purposes to other geographical regions of the United States to provide assistance and training in relation to combating and interdicting of large scale trafficking in marijuana. Over the course of years LaNier took dozens of such trips after obtaining express approval for | LaNier Decl. ¶4 | OBJECTION - Irrelevant and immaterial. LaNier's travel history is irrelevant to LaNier's defamation claim against McAdam and the issues presented in the Motion for Summary Judgment.<br><br>It remains undisputed that LaNier's own deposition admissions, coupled |

| No. | Fact | Supporting Evidence | Plaintiff's Response |
|---|---|---|---|
| | the trips from the Director of the San Diego/Imperial HIDTA pursuant to a written travel request form. Starting in approximately 2009, that person was Kean McAdam. For the trip which LaNier took with several other persons in early September 2013 to San Juan, Puerto Rico, he submitted a detailed travel request on the required form and it was signed off by Kean McAdam on 7/29/2013. | | with the undisputed evidence, establish that LaNier represented to McAdam that Gottlieb had specifically requested that he travel to Puerto Rico and that representation was false. *See LaNier's deposition testimony at pp. 271:9-272, 524:20 to 525:11, attached to Stay Decl Reply.* |
| 52. | Prior to submitting the Puerto Rico travel trip request form to McAdam, LaNier received an email communication from Shannon Kelly of ONDCP (Office of National Drug Control Policy) specifically requesting that LaNier reach out to Mike Roy, the Director of the Puerto Rico/Virgin Islands HIDTA to provide assistance on marijuana operations. McAdam was fully aware of all of this as demonstrated in an | LaNier Decl. ¶5 | OBJECTION - Irrelevant and immaterial. Shannon Kelly's knowledge of Puerto Rico trip is irrelevant to LaNier's defamation claim against McAdam and the issues presented in the Motion for Summary Judgment.<br><br>It remains undisputed that LaNier's own deposition admissions, coupled with the undisputed evidence, establish |

| No. | Fact | Supporting Evidence | Plaintiff's Response |
|---|---|---|---|
| | email which McAdam sent to Michael Roy (Puerto Rico HIDTA Director) dated 8/2/2013 in which McAdam recited that LaNier was arranging NMI support for the Puerto Rico HIDTA including future training for investigators, analysts and prevention groups. In this email McAdam extolled the virtues of LaNier and John Redman (who was traveling on the trip with LaNier) stating McAdam's understanding that ONDCP had suggested it, and was on board with it. | | that LaNier represented to McAdam that Gottlieb had specifically requested that he travel to Puerto Rico and that representation was false. *See LaNier's deposition testimony at pp. 271:9-272, 524:20 to 525:11, attached to Stay Decl Reply.* |
| 53. | LaNier further confirmed the planned trip to the Puerto Rico HIDTA in an email to Shannon Kelly of ONDCP from LaNier dated 7/16/2013. | LaNier Decl. ¶6 | OBJECTION - Irrelevant and immaterial. Shannon Kelly's knowledge of Puerto Rico trip is irrelevant to LaNier's defamation claim against McAdam and the issues presented in the Motion for Summary Judgment.<br><br>It remains undisputed |

| No. | Fact | Supporting Evidence | Plaintiff's Response |
|---|---|---|---|
| | | | that LaNier's own deposition admissions, coupled with the undisputed evidence, establish that LaNier represented to McAdam that Gottlieb had specifically requested that he travel to Puerto Rico and that representation was false. *See LaNier's deposition testimony at pp. 271:9-272, 524:20 to 525:11, attached to Stay Decl Reply.* . |
| 54. | Prior to embarking on the trip to Puerto Rico, LaNier had a telephone conference call with Kean McAdam, Shannon Kelly of ONDCP, Michael Gottlieb (National HIDTA Director who officed at ONDCP), in which Kelly and Gottlieb stated that they knew that LaNier was making the trip to the Puerto Rico HIDTA in early September 2013 and were glad that he was going with his | LaNier Decl. ¶7 | OBJECTION - Irrelevant and immaterial. Shannon Kelly's and Michael Gottlieb's knowledge of the Puerto Rico trip is irrelevant to LaNier's defamation claim against McAdam and the issues presented in the Motion for Summary Judgment.<br><br>It remains undisputed that LaNier's own |

| No. | Fact | Supporting Evidence | Plaintiff's Response |
|---|---|---|---|
| | team of people to provide the needed assistance. | | deposition admissions, coupled with the undisputed evidence, establish that LaNier represented to McAdam that Gottlieb had specifically requested that he travel to Puerto Rico and that representation was false. *See LaNier's deposition testimony at pp. 271:9-272, 524:20 to 525:11, attached to Stay Decl Reply.* |
| 55. | There was a lunch meeting which occurred in Redding, California within a week prior to LaNier leaving for Puerto Rico at which LaNier was present along with Scott Hinson, Shannon Kelly and Michael Botticelli (Acting Interim Director of ONDCP) in which it was specifically discussed that LaNier was going to go to Puerto Rico very soon to provide assistance on marijuana operations, and both Ms. Kelly and Mr. Botticelli | LaNier Decl. ¶7 | OBJECTION - Irrelevant and immaterial.<br><br>Scott Hinson's, Shannon Kelly's and Michael Botticelli's knowledge of the Puerto Rico trip is irrelevant to LaNier's defamation claim against McAdam and the issues presented in the Motion for Summary Judgment.<br><br>It remains undisputed that LaNier's own deposition |

| No. | Fact | Supporting Evidence | Plaintiff's Response |
|---|---|---|---|
| | expressed approval of the trip. | | admissions, coupled with the undisputed evidence, establish that LaNier represented to McAdam that Gottlieb had specifically requested that he travel to Puerto Rico and that representation was false. *See LaNier's deposition testimony at pp. 271:9-272, 524:20 to 525:11, attached to Stay Decl Reply*. |
| 56. | In regard to the many dozens of trips which LaNier had taken over a course of years for HIDTA business to other geographic regions in the United States and its territories, he had never been informed or understood that an explicit request, direction or authorization from ONDCP in Washington, D.C. was required for the trip to be taken. It was sufficient to have the approval of the Director of the San Diego HIDTA office, | LaNier Decl. ¶8 | OBJECTION - Irrelevant and immaterial. LaNier's travel history is irrelevant to LaNier's defamation claim against McAdam and the issues presented in the Motion for Summary Judgment. Moreover, ONDCP's required approval or authorization to travel is also irrelevant to LaNier's defamation claim against McAdam and the issues presented in the Motion for Summary Judgment. Moreover, |

| No. | Fact | Supporting Evidence | Plaintiff's Response |
|---|---|---|---|
| | which, starting in 2009, was Kean McAdam. This procedure and policy is confirmed in a letter reviewing policy and procedures for the NMI sent to LaNier by Kean McAdam dated July 8, 2013 (approximately 2 months before LaNier's Puerto Rico trip) On page 2, paragraph 2 of said letter relating to "travel," it is stated that "all NMI travel, including invitational travel, requires HIDTA Director approval in advance. . ." The letter makes no mention whatsoever about requiring the request, direction or approval of ONDCP for HIDTA business travel trips. | | It remains undisputed that LaNier's own deposition admissions, coupled with the undisputed evidence, establish that LaNier represented to McAdam that Gottlieb had specifically requested that he travel to Puerto Rico and that representation was false. *See LaNier's deposition testimony at pp. 271:9-272, 524:20 to 525:11, attached to Stay Decl Reply.* . |
| 57. | On October 16, 2013, LaNier was informed quite abruptly and out of the blue that he had been terminated as the NMI Director. Mr. McAdam told him in that the termination was not related to LaNier's job performance. This termination came as a complete shock and | LaNier Decl. ¶9 | OBJECTION - Irrelevant and immaterial. LaNier's exit interview is irrelevant to LaNier's defamation claim against McAdam and the issues presented in the Motion for Summary Judgment. Moreover, LaNier's alleged complaints about Sexual |

| No. | Fact | Supporting Evidence | Plaintiff's Response |
|---|---|---|---|
| | surprise to LaNier. LaNier was never given the opportunity of any counseling or any other effort to work out whatever problem may have existed short of termination. However, the timing of the termination is extremely suspicious since LaNier had been complaining about incidents of sexual harassment and hostile work environment directed against a HIDTA office employee (Valerie Taylor) who directly worked for LaNier in the NMI program. The harasser was Ralph Partridge, Deputy HIDTA Director working under Kean McAdam. | | Harassment are also irrelevant to LaNier's defamation claim against McAdam and the issues presented in the Motion for Summary Judgment.<br><br>It remains undisputed that LaNier's own deposition admissions, coupled with the undisputed evidence, establish that LaNier represented to McAdam that Gottlieb had specifically requested that he travel to Puerto Rico and that representation was false. *See LaNier's deposition testimony at pp. 271:9-272, 524:20 to 525:11, attached to Stay Decl Reply.* |
| 58. | No voting member of the HIDTA Executive Board ever worked in the HIDTA business office where LaNier worked. The only source of information for the HIDTA Executive Board | LaNier Decl. ¶11 | OBJECTION – Irrelevant, immaterial, lack of foundation, and speculation. LaNier has no foundation or personal knowledge to declare as to the Executive Board |

| No. | Fact | Supporting Evidence | Plaintiff's Response |
|---|---|---|---|
| | regarding what happened or was happening in the HIDTA work office was information provided to the Board by the Director, Kean McAdam, who attended all HIDTA Executive meetings. | | member's personal knowledge of "what happened or was happening in the HIDTA work office."<br><br>LaNier also has no foundation or personal knowledge to declare whether any of the voting member of the HIDTA Executive Board ever worked in the HIDTA business office where LaNier worked .<br><br>It remains undisputed that LaNier's own deposition admissions, coupled with the undisputed evidence, establish that LaNier represented to McAdam that Gottlieb had specifically requested that he <u>travel</u> to Puerto Rico and that representation was false. *See LaNier's deposition testimony at pp. 271:9-272,* |

| No. | Fact | Supporting Evidence | Plaintiff's Response |
|---|---|---|---|
| | | | *524:20 to 525:11, attached to Stay Decl Reply.* . |
| 59. | The providing of information to the HIDTA Executive Board that LaNier engaged in business travel without being requested directed or authorized to do so by ONDCP/Mike Gottlieb was devastating to LaNier because it falsely impaired his credibility and honesty with the HIDTA Executive Board resulting in his termination as the NMI Director. | LaNier Decl. ¶12 | OBJECTION – <br><br> Irrelevant, immaterial, lack of foundation, and speculation. <br><br> LaNier has no foundation or personal knowledge to declare as the reasons the eleven SDI-HIDTA Executive Board voted the way they did. <br><br> It remains undisputed that LaNier's own deposition admissions, coupled with the undisputed evidence, establish that LaNier represented to McAdam that Gottlieb had specifically requested that he travel to Puerto Rico and that representation was false. *See LaNier's deposition testimony at pp. 271:9-272, 524:20 to 525:11,* |

| No. | Fact | Supporting Evidence | Plaintiff's Response |
|---|---|---|---|
| | | | *attached to Stay Decl Reply.* |
| 60. | HIDTA cannot hire or fire anyone, including LaNier. | District Court Order Granting U.S. Motion to Dismiss (Docket No. 34) at pp. 14-16; "HIDTA Program Policy and Budget Guidance", section 3.4.5 | OBJECTION – Misstates the District Court Order Granting U.S. Motion to Dismiss and the "HIDTA Program Policy and Budget Guidance".<br><br>This Court did not rule that "HIDTA cannot hire or fire anyone, including LaNier."<br><br>The Court cited to "HIDTA Program Policy and Budget Guidance" section 3.4.7, which expressly states that "Each Executive Board selects an individual to serve as the HIDTA Director." *See* p.15:6-7. |
| 61. | There is no legal entity known as the "San Diego-Imperial HIDTA Executive Board." | District Court Order Granting U.S. Motion to Dismiss (Docket No. 34) at p. 14; "HIDTA | OBJECTION – Misstates the District Court Order Granting U.S. Motion to |

| No. | Fact | Supporting Evidence | Plaintiff's Response |
|---|---|---|---|
| | | Program Policy and Budget Guidance", section 3.4.5 | Dismiss and the "HIDTA Program Policy and Budget Guidance".<br><br>This Court did not rule that "There is no legal entity known as the "San Diego-Imperial HIDTA Executive Board." |
| 62. | The San Diego-Imperial HIDTA is not a "public entity." | Cal. Evid. Code §§200 and 1040; *Vallas v. City of Chula Vista*, 56 Cal App. 3d 382, 387 (1976) | OBJECTION. Irrelevant and immaterial. Whether the San Diego-Imperial HIDTA is or is not a "public entity" is irrelevant to LaNier's defamation claim against McAdam and the issues presented in the Motion for Summary Judgment. Moreover, |
| 63. | LaNier was not an employee of HIDTA. | District Court Order Granting U.S. Motion to Dismiss (Docket No. 34) at pp. 14-16; "HIDTA Program Policy and Budget Guidance," section | OBJECTION. Irrelevant and immaterial. Whether LaNier was or was not an employee of HIDTA is irrelevant to LaNier's defamation claim |

| No. | Fact | Supporting Evidence | Plaintiff's Response |
|---|---|---|---|
| | | 3.4.5 | against McAdam and the issues presented in the Motion for Summary Judgment. Moreover, |
| 64. | Defendant has refused to allow discovery into matters relating to the "Executive Session" aka the "closed session." | Rule 56(d) Declaration of M. Richardson Lynn, Jr. at ¶¶ 3-7 | OBJECTION. Irrelevant, immaterial, misstates the facts.<br><br>On October 5, 2016, McAdam served a written objection in advance of McAdam's scheduled deposition which provided, in part, the following:<br><br>Defendant Kean McAdam hereby objects, and will, refuse to answer any deposition questions, and will not produce any DOCUMENTS RELATING to the nature and content of any communication that occurred during the October 16, 2013 San Diego-Imperial High Intensity Drug Trafficking Area ("HIDTA") Executive Board's "Executive |

| No. | Fact | Supporting Evidence | Plaintiff's Response |
|---|---|---|---|
| | | | Session" – also called the closed session, without a court order. The communication that occurred during the October 16, 2013 San Diego-Imperial HIDTA Executive Board's *closed* "Executive Session" are privileged under California Evidence Code section 1040, protected from tort liability under California Civil Code section 47, and not discoverable pursuant to California Code of Civil Procedure section 2017.010.<br><br>LaNier did not respond to this written objection. He did not seek to meet and confer with McAdam prior to the deposition or seek a court order compelling testimony relating to the nature and content of any communication that occurred during the October 16, 2013 *closed* Executive Session. LaNier's counsel waited until mid-questioning at |

| No. | Fact | Supporting Evidence | Plaintiff's Response |
|---|---|---|---|
| | | | McAdam's deposition on October 11, 2016 to address the objection by merely stating "we are looking at a discovery motion."[1] (McAdam's depo at 51:5-6.). Following McAdam's deposition, McAdam, LaNier and the City of Chula Vista engaged in written and oral meet and confer communications regarding the evidentiary admissibility of communication that occurred during the October 16, 2013 *closed* meeting. The parties were at an impasse. LaNier, however, did not seek such an order from this Court. The deadline to file a Discovery motion on this issue expired on November 11, 2016 (at the latest) and according to this Court's standing orders, LaNier has waived his right to |

[1] LaNier's deposition testimony p..46:2-4, attached to Stay Decl Rely as Exh. H.

| No. | Fact | Supporting Evidence | Plaintiff's Response |
|---|---|---|---|
| | | | seek to compel further deposition testimony of Kean McAdam. *See Court's March 21, 2016 "Scheduling Order Regulating Discovery and other Pre-Trial Proceedings".* |