UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TOMMY LaNIER,<br><br>　　　　　　　　　　Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA, et al.,<br><br>　　　　　　　　　　Defendants. | Case No. 15-cv-00360-BAS-BLM<br><br>**ORDER GRANTING DEFENDANT MCADAM'S MOTION FOR SUMMARY JUDGMENT** |

Plaintiff Tommy LaNier brings a claim for defamation against Defendant Kean McAdam, alleging McAdam defamed him by telling an executive board he falsely justified a business trip to Puerto Rico. McAdam now moves for summary judgment, arguing, among other things, that the allegedly defamatory statement is privileged under the "common interest" privilege of California Civil Code § 47(c). The Court heard oral argument on the motion on August 9, 2017. For the following reasons, the Court grants the motion. (ECF No. 42.)

## BACKGROUND

The events giving rise to this suit occurred while both Plaintiff LaNier and

Defendant McAdam worked as part of the San Diego-Imperial region of the High Intensity Drug Trafficking Area ("HIDTA") program. HIDTA is administered by the Office of National Drug Control Policy ("ONDCP"), a component of the Executive Office of the President. HIDTA is not an organization itself, but rather serves as a "coordination umbrella" for federal, state, and local law enforcement agencies, "enabling them to combine and leverage resources and capabilities to address drug trafficking and drug-related crime." (ECF No. 42-3, Exh. B, HIDTA Program–Policy and Budget Guidance ("Guidance") § 2.3.5.) The Director of ONDCP designates specific areas in the United States as HIDTAs, and then allocates federal funds to support coordinated counter-drug activities in those areas. (*Id.* § 2.1.3.) The San Diego-Imperial HIDTA is one such designee, and is referred to as the SDI-HIDTA.

The SDI-HIDTA, like all HIDTA designees, is governed by an Executive Board ("Board") comprised of federal, state, and local law enforcement leaders from the designated area. (*Id.* § 3.4.) The Board is responsible for assessing the drug trafficking threat in the area, developing a strategy to address the threat, designing and overseeing initiatives to implement the strategy, reviewing and approving reports from the HIDTA to the Director of ONDCP, and managing funds. (*Id.* §§ 2.3.2, 3.4.2.)

Each Board selects a HIDTA Director, who is responsible for implementing the Board's strategy and policies. (*Id.* § 3.4.7.) Defendant McAdam is, and was at all times relevant, Director of the SDI-HIDTA. As Director, McAdam's principal responsibilities include: providing day-to-day administrative, financial, and program management for HIDTA operations, ensuring that SDI-HIDTA initiatives comply with federal requirements, and advising the Board concerning the performance of HIDTA initiatives. (*Id.* § 3.5.1.) The SDI-HIDTA Director also serves as the point of contact between the Board and ONDCP on all HIDTA matters. (*Id.* § 3.5.2.)

From January of 2004 to October of 2013, Plaintiff LaNier served as the Director of the National Marijuana Initiative ("NMI"), an initiative of the SDI-HIDTA. (ECF No. 43-2, LaNier Decl. ¶ 2.) In this capacity, LaNier frequently traveled

to other regions of the United States to provide training related to marijuana interdiction. Because the NMI is an initiative of the SDI-HIDTA, LaNier's NMI-related travel required approval by the SDI-HIDTA Director. (*Id.* ¶ 8.) In July of 2013, LaNier submitted, and McAdam approved, a request to travel with a small team to the Puerto Rico-United States Virgin Islands ("PR-USVI") HIDTA to assess training needs. (LaNier Decl. Exh. 2-2.) LaNier traveled to Puerto Rico from September 3 through September 6, 2013.

According to McAdam, he approved LaNier's travel request based on LaNier's representation that Shannon Kelly and Mike Gottlieb of ONDCP requested and directed LaNier to take the trip. (McAdam Decl. ¶ 16.) After LaNier left for Puerto Rico, McAdam participated in a conference call with Kelly and Gottlieb during which they denied directing or requesting that LaNier travel to Puerto Rico. (*Id.* ¶ 20.)

On October 16, 2013, approximately six weeks after LaNier returned from Puerto Rico, the SDI-HIDTA Executive Board held its monthly meeting. The meeting included a "closed session" to which McAdam was invited to discuss personnel issues involving LaNier. LaNier alleges that during the closed session, McAdam defamed him by telling the Board he falsely represented that Kelly and Gottlieb requested and directed he travel to Puerto Rico. (Opp'n 13:20–25.) Following the closed session, the Board voted to give LaNier the option to retire, resign, or be fired from his position. LaNier retired.

LaNier originally filed suit in the Superior Court of California, County of San Diego, asserting claims for defamation against McAdam and the City of Chula Vista, and claims for retaliation against McAdam and other defendants. After the case was removed to this Court, LaNier filed a First Amended Complaint ("FAC") reasserting his claim for defamation against McAdam. McAdam now moves for summary judgment on the defamation claim pursuant to Federal Rule of Civil Procedure 56(a).

(ECF No. 42.) LaNier opposes.[1] (ECF No. 43.)

# DISCUSSION

## A. LaNier's Request to Amend

The Court first addresses LaNier's request to amend his FAC to more precisely allege the content of McAdam's defamatory statement to the Board. In the FAC, LaNier alleges McAdam told the Board "LaNier . . . falsified his travel voucher and falsified or lied about travel expenses incurred with regard to a business trip to Puerto Rico." (FAC ¶ 24.) However, in his opposition to McAdam's motion for summary judgment, LaNier alleges the specific defamation was McAdam's assertion that LaNier lied by stating that Kelly and Gottlieb of ONDCP requested and directed LaNier to travel to Puerto Rico. (Opp'n 13:20–25.) LaNier requests this latter statement be the statement the Court treat as the alleged defamation at issue.

The Court grants LaNier's request to amend. Generally, when a party raises a new claim or issue in opposition to a motion for summary judgment, district courts should construe it as a request under Federal Rule of Civil Procedure 15(a) to amend the pleadings "out of time," and grant leave to amend "with extreme liberality." *Desertrain v. City of Los Angeles*, 754 F.3d 1147, 1154 (9th Cir. 2014) (citations omitted). Here, the Court finds no reason to depart from Rule 15(a)'s liberal policy favoring amendment.

McAdam argues leave to amend is improper because of undue delay and severe prejudice. (Reply 1:14–4:21.) The Court finds this argument unpersuasive. LaNier requested leave to amend in his first filing after reviewing McAdam's grounds for summary judgment, and part of the evidence that forms the basis of LaNier's request was obtained only six weeks prior to him seeking leave to amend. In addition, the risk of prejudice to McAdam is minimal given that (a) McAdam knows the precise

---

[1] In his opposition, LaNier requests the Court wait until it decides LaNier's motion to enlarge time and compel discovery before ruling on McAdam's motion for summary judgment. Magistrate Judge Barbara Major denied LaNier's motion to enlarge time and compel discovery on March 10, 2017. (ECF No. 62.) Accordingly, LaNier's request is denied as moot.

statement he communicated to the Board during the October 16, 2013 closed session, (b) the amended statement reflects what LaNier found during discovery, and (c) both in his motion for summary judgment and reply McAdam proffers arguments that assume the more specific defamatory statement alleged by LaNier. Under these circumstances, the Court finds no undue delay or prejudice that would justify denying LaNier's request to amend. Accordingly, the Court will treat LaNier's amended allegation—i.e., that McAdam asserted LaNier lied by stating that Kelley and Gottlieb requested and directed LaNier to travel to Puerto Rico—as the alleged defamation at issue.

## B. Legal Standard for Summary Judgment

"A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought." Fed. R. Civ. P. 56(a). Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.* A fact is "material" if it could affect the outcome of the case under the applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of material fact is "genuine" only when the evidence is such that a reasonable jury could resolve the issue in favor of the nonmoving party. *Id.*

The party moving for summary judgment has the initial burden of demonstrating the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To meet this burden, the moving party must either (1) produce evidence negating an essential element of the nonmoving party's claim or defense or (2) show that the nonmoving party does not have enough evidence of an essential element of his claim or defense to carry his ultimate burden of persuasion at trial. *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000) (citation omitted). If the moving party fails to carry his initial burden, the nonmoving party has no obligation to produce any evidence, and summary judgment will be denied. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 160–61 (1970); *Great Haw.*

*Fin. Corp. v. Aiu*, 863 F.2d 617, 619 (9th Cir. 1988) (per curiam). If, however, the moving party carries his initial burden, the nonmoving party must then "go beyond the pleadings" and, by affidavit or other appropriate evidence, demonstrate that there is a genuine dispute for trial. *Celotex*, 477 U.S. at 324.

At the summary judgment stage, "the evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Tolan v. Cotton*, 134 S. Ct. 1861, 1863 (2014) (per curiam) (alteration omitted) (quoting *Anderson*, 477 U.S. at 255). The quantum and quality of evidence needed to defeat a properly supported motion for summary judgment is determined by the standard of proof that would apply at a trial on the merits. *Anderson*, 477 U.S. at 252. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Friedman v. Live Nation Merch., Inc.*, 833 F.3d 1180, 1185 (9th Cir. 2016) (quoting *McIndoe v. Huntington Ingalls Inc.*, 817 F.3d 1170, 1173 (9th Cir. 2016)).

## C. Common Interest Privilege

McAdam moves for summary judgment on various grounds, one of which is that the allegedly defamatory statement to the Board is protected by California's common interest privilege, Cal. Civ. Code § 47(c). The Court agrees summary judgment is appropriate on this ground.[2][3]

To prove defamation under California law, a plaintiff must show the intentional publication of a statement of fact that is false, unprivileged, and has a natural tendency to injure or cause special damage. *Family Home & Fin. Ctr., Inc. v. Fed. Home Loan*

---

[2] Because the Court resolves McAdam's motion for summary judgment on the basis of the common interest privilege, it does not reach McAdam's other grounds for summary judgment.

[3] Concurrent with his motion for summary judgment, McAdam filed a request for judicial notice of the HIDTA Program–Policy and Budget Guidance dated September 9, 2012 ("Guidance"). (ECF No. 42-2, Exh. A.) On summary judgment, documentary evidence such as the Guidance must be properly authenticated before being considered by the district court. *Orr v. Bank of America, NT & SA*, 285 F.3d 764, 773–74 (9th Cir. 2002). Here, the Guidance is self-authenticating under Federal Rule of Evidence 902(5) as a "book, pamphlet, or other publication purporting to be issued by a public authority." Therefore, the Guidance is properly admitted and will be considered accordingly. McAdam's request for judicial notice is denied as moot.

*Mortg. Corp.*, 525 F.3d 822, 826 (9th Cir. 2008) (quoting *Smith v. Maldonado*, 85 Cal. Rptr. 2d 397, 402 (1999)). Under the common interest privilege set forth in Cal. Civ. Code § 47(c), "a defendant who makes a statement to others on a matter of common interest is immunized from liability for defamation so long as the statement is made without malice." *Lundquist v. Reusser*, 875 P.2d 1279, 1279 (Cal. 1994). The defendant has the initial burden of showing that the allegedly defamatory statement was made on a privileged occasion. *Id.* at 1284. The burden then shifts to the plaintiff to show the defendant made the statement with "actual malice." *Id.*

A plaintiff may establish actual malice in two ways: (1) "by a showing that the publication was motivated by hatred or ill will towards the plaintiff," or (2) "by a showing that the defendant lacked reasonable grounds for belief in the truth of the publication and therefore acted in reckless disregard of the plaintiff's rights." *Sanborn v. Chronicle Pub. Co.*, 556 P.2d 764, 768 (Cal. 1976) (quoting *Roemer v. Retail Credit Co.*, 119 Cal. Rptr. 82, 88 (Ct. App. 1975)). To prove reckless disregard, a plaintiff must show the defendant "made the false publication with a high degree of awareness of . . . probable falsity, or must have entertained serious doubts as to the truth of his publication." *Young v. CBS Broad., Inc.*, 151 Cal. Rptr. 3d 237, 245 (Ct. App. 2012) (citations omitted) (quoting *Harte-Hanks Commc'ns v. Connaughton*, 491 U.S. 657, 667 (1989)). "When a plaintiff fails to raise triable issues of fact regarding whether a defendant acted with reckless disregard, a court may grant summary judgment in favor of the defendant as a matter of law." *Pashman v. Aetna Ins. Co.*, No. C–13–02835 DMR, 2014 WL 3571689, at *19 (N.D. Cal. July 18, 2014).

As an initial matter, the Court finds there is no genuine dispute of fact as to whether McAdam's statement was made on a privileged occasion. McAdam made the statement to the SDI-HIDTA Executive Board, a body charged with "providing direction and oversight in establishing and achieving the goals for the [SDI-] HIDTA." (Guidance § 3.4.2.) In light of its oversight responsibilities, the Board had a legitimate interest in the conduct of LaNier, who was in charge of an important SDI-HIDTA

initiative, and whose business travel was paid for with HIDTA funds. (LaNier Decl. Exh. 6-1.) McAdam shared this interest in LaNier's conduct given that McAdam's responsibilities included "day-to-day administrative, financial, and program management for the operations of the HIDTA" and advising the Board "concerning the performance of HIDTA initiatives," such as the NMI. (Guidance § 3.5.1.) Thus, McAdam's statement to the Board concerning LaNier's allegedly false justification for traveling to Puerto Rico was "a statement to others on a matter of common interest," and is privileged absent actual malice. *Lundquist*, 875 P.2d at 1279.

LaNier does not dispute that McAdam's statement was made on a privileged occasion; rather, he asserts summary judgment should be denied because there is a genuine dispute as to whether McAdam made the statement with actual malice. Specifically, LaNier contends McAdam did not have reasonable grounds to believe the truth of his statement to the Board and therefore acted with reckless disregard. McAdam argues there is no triable issue on this point because: (1) LaNier testified during his deposition that he told McAdam Kelly and Gottlieb asked him to travel to Puerto Rico, and (2) McAdam spoke with Kelly and Gottlieb before making the allegedly defamatory statement to the Board, and both of them denied directing or requesting LaNier to travel to Puerto Rico.

LaNier's evidence that McAdam lacked reasonable grounds for believing the truth of his statement consists of the following: (1) a July 11, 2013 email from Shannon Kelly asking LaNier to "reach out" to Mike Roy, Director of the PR-USVI HIDTA, regarding possible "guidance" on marijuana operations (LaNier Decl. Exh. 3); (2) an email from McAdam to Roy, sent prior to LaNier making the trip to Puerto Rico, in which McAdam touted LaNier's expertise (LaNier Decl. Exh. 4-1); (3) the fact that there is no policy requiring ONDCP to request or direct any business trip of LaNier within the United States or its territories (LaNier Decl. ¶ 8; Exh. 6-2); (4) the fact that McAdam has nothing in writing from Mike Gottlieb indicating Gottlieb disapproved of the Puerto Rico trip (ECF No. 43-1, Lynn Decl. Exh. B-7); (5)

McAdam's admission that he was "irritated" by the situation involving alleged incidents of sexual harassment in the SDI-HIDTA office and that he knew LaNier was complaining about the situation on behalf of the victim of the alleged harassment (ECF No. 44, Corrected Lynn Decl., Exh. A-1, A-2); (6) the fact that the Board did not undertake an independent investigation to verify McAdam's statement regarding LaNier's alleged untruthfulness (Lynn Decl. Exh. A-3); and (7) the fact that during LaNier's exit interview, McAdam told LaNier his termination was not related to his job performance (LaNier Decl. ¶ 9).

The Court finds LaNier's evidence, taken as true, does not raise a genuine dispute as to whether McAdam lacked reasonable grounds to believe the truth of his statement to the Board.

First, the July 11, 2013 email from Kelly asking LaNier to "reach out" to Mike Roy is irrelevant to McAdam's grounds for belief because there is no evidence McAdam was copied on, or was otherwise aware of, the email. And even if LaNier had read the email, Kelly's request for LaNier to "reach out" to Roy does not support the inference that McAdam should have interpreted the email as Kelly asking or directing LaNier to travel to Puerto Rico. *See Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1065 n.10 (9th Cir. 2002) (citation omitted) (explaining that on summary judgment the court need not draw *all* possible inferences in non-movant's favor, but only all *reasonable* ones). Indeed, LaNier testified at his deposition that he did not think anything in Kelly's July 11, 2013 email suggested that he travel to Puerto Rico.[4]

---

[4] At his January 7, 2015 deposition, LaNier testified as follows:

"Q. Exhibit 22 is an email from Shannon Kelly to you dated July 11, 2013. You've seen this before, haven't you?

A. [LaNier] Yes, I have.

Q. You spoke to her on July 11, right?

A. [LaNier] After I received this email.

Second, McAdam's email to Roy touting LaNier's expertise in no way undermines McAdam's basis for belief in the truth of his statement. There is no contradiction in McAdam respecting LaNier's subject matter expertise and later forming a reasonable belief that LaNier lied about ONDCP directing or requesting the trip. Furthermore, McAdam's statement in the email that "[m]y understanding is that ONDCP suggested [the trip]" is not significantly dispositive where there is no basis to find that McAdam's "understanding" came from ONDCP rather than from LaNier himself. Here, the undisputed evidence indicates that LaNier told McAdam that ONDCP requested and directed he travel to Puerto Rico, and that McAdam learned from ONDCP that that was not the case (ECF No. 46-1, Stayton Decl., Exh. D, LaNier Dep. 271:9–272:2; McAdam Decl. ¶¶ 19, 20).[5] On this record, McAdam's email to Roy does not raise a genuine dispute of fact as to McAdam's grounds for believing LaNier had been untruthful.

Third, the fact there is no official policy requiring ONDCP to request or direct

---

> Q. You don't read anything in this email, Exhibit 22, do you, that suggests you travel to Puerto Rico?
>
> A. [LaNier] No.
>
> Q. And in the conversation you had with Ms. [] Kelly on July 11 after you got this email, was there anything she said that suggested to you that she or anybody in ONDCP wanted you to travel to Puerto Rico?
>
> A. [LaNier] No."

(ECF No. 46-1, Stayton Decl., Exh. E, LaNier Dep. 524:20–525:11.)

[5] LaNier attempts to dispute this evidence by citing the LaNier Declaration ¶¶ 4–8. But nothing in the paragraphs cited controverts McAdam's evidence that LaNier told him ONDCP requested and directed he travel to Puerto Rico, and that he learned from ONDCP that that was not the case. Taken as true, the portions of the LaNier Declaration cited by LaNier establish that (1) McAdam authorized the Puerto Rico trip, (2) McAdam was under the impression ONDCP suggested the trip, (3) McAdam's authorization was the only authorization required for LaNier to travel, and (4) Kelly and Gottlieb were aware LaNier would be traveling to Puerto Rico. At no point in the LaNier Declaration does LaNier deny having told McAdam that ONDCP requested and directed the trip, or challenge McAdam's account of his conversation with ONDCP on the issue.

LaNier's business-related travel is irrelevant to McAdam's belief in the truth of what he told the Board. McAdam did not tell the Board LaNier traveled to Puerto Rico without required ONDCP authorization. Rather, McAdam told the Board LaNier falsely represented ONDCP had requested and directed the trip be taken. These are separate and distinct issues. The fact that LaNier did not *need* an ONDCP request to travel does not call into question evidence showing LaNier told McAdam he *received* such a request. Therefore, the lack of an official policy requiring ONDCP to request or direct LaNier's travel does not create a genuine dispute as to whether McAdam reasonably believed LaNier lied about traveling at ONDCP's behest.

Fourth, the fact that McAdam has nothing in writing indicating Gottlieb disapproved of the Puerto Rico trip does not create a genuine dispute of fact regarding reckless disregard. For one thing, the issue is not whether ONDCP "approved" or "disapproved" of the trip; the issue is whether ONDCP specifically requested or directed LaNier to take the trip. In addition, LaNier does not explain how the lack of something in writing from Gottlieb creates a triable issue where the evidence shows McAdam spoke with Gottlieb before making the allegedly defamatory statement to the Board. (McAdam Decl. ¶¶ 18–20.)

Fifth, McAdam's admission that he was "irritated" by alleged incidents of sexual harassment in the SDI-HIDTA office, and aware of LaNier's role in advocating on behalf of the alleged victim of the harassment, does not raise a genuine dispute as to whether McAdam had reasonable grounds for his statement. Although the evidence supports the reasonable inference that McAdam was frustrated with LaNier, such frustration could only support a finding of malice to the extent it impacted McAdam's "actual belief" concerning the truthfulness of the statement he made before the Board. *See Harkonen v. Fleming*, 880 F. Supp. 2d 1071, 1081 (N.D. Cal. 2012) (explaining that the focus of the actual malice inquiry is on "the defendant's attitude toward the truth or falsity of the material published," not "the defendant's attitude toward the plaintiff") (quoting *Christian Research Inst. v. Alnor*, 55 Cal. Rptr. 3d 600, 618 (Ct.

App. 2007)); *Reader's Digest Ass'n v. Superior Court*, 690 P.2d 610, 619 (Cal. 1984) (explaining that "mere proof of ill will" is insufficient to prove actual malice). Here, McAdam spoke to Kelly and Gottlieb before communicating to the Board his belief that LaNier had been untruthful. Thus, even if McAdam was frustrated with LaNier, LaNier has not raised a genuine dispute of fact that this frustration impacted McAdam's belief in the truth of his statement.

Sixth, the fact that the Board did not independently investigate the truth of McAdam's statement is irrelevant. McAdam is the person who made the allegedly defamatory statement and so it his basis for belief in the truth of the statement that matters, not the Board's.

Seventh, the fact that McAdam told LaNier during LaNier's exit interview that his termination was not related to job performance does not raise a triable issue as to reckless disregard. To prove reckless disregard, a plaintiff must provide evidence that the defendant had a high degree of awareness that the statement in question was probably false, or that the defendant entertained serious doubts about the truth of the statement. *Young*, 151 Cal. Rptr. 3d at 245. McAdam's basis for believing the truth of his statement was his conversation with Kelly and Gottlieb before speaking to the Board. Thus, the fact that McAdam told LaNier his termination was not related to performance does not raise a genuine dispute as to whether McAdam lacked reasonable grounds for believing the truth of what he told the Board.

At oral argument, LaNier's counsel called attention to a conference call that McAdam held with Gottlieb, Kelly, and LaNier before LaNier traveled to Puerto Rico. (Lynn Decl. Exh. B-5, McAdam Dep. 57:21–59:1.) Toward the end of the call, McAdam mentioned that LaNier would soon be traveling to Puerto Rico at ONDCP's suggestion or request. Neither Kelly nor Gottlieb responded when McAdam raised the subject. LaNier's counsel argues this call proves Kelly and Gottlieb were aware of the trip, and therefore McAdam had no reasonable grounds for telling the Board that ONDCP did not request or direct it.

This evidence does not create the conflict LaNier's counsel suggests it creates. Had McAdam made his statement to the Board on the basis of Kelly and Gottlieb's non-response at the end of the above-described call, there might be a triable issue as to whether McAdam had a reasonable basis for believing the truth of his statement. But that is not what happened. Instead, before McAdam spoke to the Board concerning LaNier, he held a conference call with Kelly and Gottlieb specifically to discuss the Puerto Rico trip, during which Kelly and Gottlieb denied requesting or directing LaNier to take the trip. (McAdam Decl. ¶¶ 18–20.) In light of this second call, the fact that Kelly and Gottlieb were non-responsive when McAdam mentioned the Puerto Rico trip during the previous call does not create a genuine dispute as to whether McAdam had a reasonable basis for believing LaNier had been untruthful.

In sum, McAdam has shown that his statement to the Board regarding LaNier's alleged untruthfulness involved a matter of common interest, and LaNier's evidence, and reasonable inferences drawn therefrom, fail to raise a genuine dispute of fact regarding actual malice. Thus, the common interest privilege of Cal. Civ. Code § 47(c) applies, and McAdam is protected from liability for his statement to the Board.

## CONCLUSION

At the summary judgment stage, district courts do not make credibility determinations or weigh conflicting evidence. The evidence of the nonmoving party is accepted as true, and all reasonable inferences are drawn in his favor. But the nonmoving party cannot defeat a properly supported motion for summary judgment when the evidence cited is insufficient to create a genuine dispute for trial. Here, the quantum and quality of evidence provided by LaNier is insufficient to create a genuine dispute on the issue of actual malice. Therefore, California's common interest privilege applies as a matter of law, and McAdam is entitled to summary judgment. McAdam's motion for summary judgment is GRANTED.

//

//

//

**IT IS SO ORDERED.**

DATED: August 14, 2017

Hon. Cynthia Bashant
United States District Judge