1
2
3
4
5
6
7
8                    **UNITED STATES DISTRICT COURT**
9                  **SOUTHERN DISTRICT OF CALIFORNIA**

10
11   TOMMY LaNIER,                    Case No. 15-cv-00360-BAS-BLM

                            Plaintiff,   **ORDER GRANTING IN PART**
12                                       **AND DENYING IN PART**
                                         **DEFENDANT CITY OF CHULA**
13                                       **VISTA'S MOTION FOR**
     v.                                  **SUMMARY JUDGMENT**
14
15
16   UNITED STATES OF AMERICA, et
     al.,
17
                            Defendants.
18
19

20       Plaintiff Tommy LaNier brings claims for defamation and retaliation against

21   Defendant City of Chula Vista ("City"), alleging the City defamed him and forced

22   him to resign because he complained about sexual harassment directed toward another

23   employee. The City now moves for summary judgment arguing, among other things,

24   that LaNier cannot state a prima facie case of retaliation and that any allegedly

25   defamatory statement was privileged under California law.

26                               **BACKGROUND**

27       At the time of the events giving rise to this suit, Plaintiff LaNier was a City of

28   Chula Vista payroll employee working as part of the San Diego-Imperial region of the

High Intensity Drug Trafficking Area ("HIDTA") program. HIDTA is administered by the Office of National Drug Control Policy ("ONDCP"), a component of the Executive Office of the President. HIDTA is not a federal agency or organization itself, but rather a "coordination umbrella" that enables federal, state, and local law enforcement agencies "to combine and leverage resources and capabilities to address drug trafficking and drug-related crime." (ECF No. 53-2, Exh. A, HIDTA Program– Policy and Budget Guidance ("Guidance") § 2.3.5.) The Director of ONDCP designates specific areas in the United States as HIDTAs, and then allocates federal funds to designated HIDTAs to support counter-drug activities. (*Id.* § 2.1.3.) The San Diego-Imperial HIDTA ("SDI-HIDTA") is one such designee.

Each HIDTA is governed by an Executive Board comprised of federal, state, and local law enforcement leaders from the designated area. (*Id.* §§ 3.4, 3.4.3.) However, "HIDTAs and their Executive Boards are not considered legal entities under Federal law and generally lack the authority to enter into contracts, hire employees, or obligate federal funds." (*Id.* § 3.4.5.) Instead, HIDTA Executive Boards select grantees to obligate federal funds. *Id.* The City of Chula Vista is a grantee for the SDI-HIDTA.

Under the HIDTA Program Guidance, grantees such as the City "hire employees, issue contracts, manage property, and expend HIDTA program funds as necessary to carry out the grant activities approved by the Executive Board." *Id.* Specifically, the Guidance provides that "[g]rantees may use HIDTA funds to hire employees or to enter into contracts with individuals to manage and staff the HIDTA." (*Id.* § 6.8.1.) The use of HIDTA funds "is subject to the respective grantee's policies and procedures pertaining to property management, employment, procurement, and financial management." *Id.*

Plaintiff LaNier and Defendant Kean McAdam[1] were at all times relevant

---

[1] LaNier's First Amended Complaint asserts a defamation claim against McAdam. The Court granted summary judgment in McAdam's favor on that claim in an Order filed August 14, 2017.

payroll employees of the City whose positions were funded by the HIDTA program. McAdam served as Director of the SDI-HIDTA. His responsibilities included providing day-to-day program management for HIDTA operations, ensuring that SDI-HIDTA initiatives complied with federal requirements, and advising the Board concerning the performance of HIDTA initiatives. (*Id.* § 3.5.1.) LaNier served as Director of the National Marijuana Initiative ("NMI"), an initiative of the SDI-HIDTA. In this capacity, LaNier frequently traveled to other regions of the United States to provide training related to marijuana interdiction. (ECF No. 56-4, LaNier Decl. ¶ 4.)

LaNier alleges the City forced him to resign as NMI Director because he complained that Ralph Partridge, the then Deputy Director of the SDI-HIDTA, was sexually harassing a female SDI-HIDTA staffer named Valerie Taylor. (ECF No. 16.) Partridge's alleged conduct included bragging to Taylor about the size of his penis, constantly visiting Taylor in her office for hugs and fist bumps, calling Taylor a "fucking cunt" when she rejected his advances, and insinuating that Taylor would be his next wife. (LaNier Decl. ¶ 10; ECF No. 53-4, LaNier Dep. at 54.) LaNier complained to McAdam about the situation, to which McAdam responded that he would "talk to Ralph." (LaNier Decl. ¶ 10.)

In September of 2013, sometime after complaining about Partridge's conduct, LaNier traveled with a small team to the Puerto Rico HIDTA to assess training needs. When LaNier returned from Puerto Rico, McAdam accused him of having falsified his travel voucher for the trip. On October 16, 2013, the SDI-HIDTA Executive Board held a monthly meeting, including a "closed session" to which McAdam was invited to discuss personal issues involving LaNier. LaNier alleges that during this closed session, McAdam, and the City as McAdam's employer, defamed him by telling the

---

(ECF No. 73.) The motion for summary judgment currently before the Court involves only the City of Chula Vista and LaNier, though McAdam's conduct is relevant given LaNier's allegations that McAdam engaged in defamation and retaliation as a City supervisory employee.

Board he falsely represented that ONDCP officials requested he travel to Puerto Rico. Following the closed session, the Board voted to give LaNier the option to retire, resign, or be fired from his position. LaNier chose to retire.

Based on these allegations, LaNier asserts claims against the City for defamation, and for retaliation under both California's Fair Employment and Housing Act ("FEHA") and Title VII of the Civil Rights Act of 1964. The City now moves for summary judgment on all claims pursuant to Federal Rule of Civil Procedure 56(a). (ECF No. 53.) LaNier opposes. (ECF No. 56.)

## LEGAL STANDARD

"A party may move for summary judgment, identifying each claim or defense— or the part of each claim or defense—on which summary judgment is sought." Fed. R. Civ. P. 56(a). Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.* A fact is "material" if it could affect the outcome of the case under the applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of material fact is "genuine" when the evidence is such that a reasonable jury could resolve the issue in favor of the nonmoving party. *Id.*

The party moving for summary judgment has the initial burden of demonstrating the absence of a genuine dispute of fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To meet this burden, the moving party must either (1) produce evidence negating an essential element of the nonmoving party's claim or defense or (2) show that the nonmoving party does not have enough evidence of an essential element of his claim or defense to carry his ultimate burden of persuasion at trial. *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000) (citation omitted). If the moving party fails to carry his initial burden, the nonmoving party has no obligation to produce any evidence, and summary judgment will be denied. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 160–61 (1970); *Great Haw. Fin. Corp. v. Aiu*, 863 F.2d 617, 619 (9th Cir. 1988) (per curiam). If, however, the

moving party carries his initial burden, the nonmoving party must then "go beyond the pleadings" and, by affidavit or other appropriate evidence, demonstrate that there is a genuine dispute for trial. *Celotex*, 477 U.S. at 324.

At the summary judgment stage, the court may not make credibility determinations or otherwise weigh the evidence. *Anderson*, 477 U.S. at 255. Rather, "the evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Tolan v. Cotton*, 134 S. Ct. 1861, 1863 (2014) (per curiam) (alteration omitted) (quoting *Anderson*, 477 U.S. at 255). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Friedman v. Live Nation Merch., Inc.*, 833 F.3d 1180, 1185 (9th Cir. 2016) (quoting *McIndoe v. Huntington Ingalls Inc.*, 817 F.3d 1170, 1173 (9th Cir. 2016)). However, "if a rational trier of fact might resolve the issue in favor of the nonmoving party, summary judgment must be denied." *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987).

## DISCUSSION

The City moves for summary judgment on LaNier's FEHA and Title VII retaliation claims on grounds that: (1) the City was not LaNier's employer; (2) the SDI-HIDTA was LaNier's "special employer" and therefore solely liable for the alleged retaliation; (3) LaNier did not exhaust his administrative remedies with respect to his Title VII retaliation claim; and (4) LaNier's evidence is insufficient to state a prima facie case of retaliation. As to LaNier's defamation claim, the City argues, among other things, that McAdam's statement to the Board is protected by California's common interest privilege. The Court first addresses the City's argument that LaNier failed to exhaust his administrative remedies with respect to his Title VII retaliation claim before turning to the City's remaining arguments.[2]

---

[2] The City requests the Court take judicial notice of (1) the HIDTA Program Policy and Budget Guidance dated September 21, 2012 ("Guidance") (ECF No. 53-2, Exh. A); (2) a "Worksharing Agreement" between the California Department of Fair Employment and Housing and the United States Equal Employment Opportunity Commission for Fiscal Year ("FY") 2013 (ECF No. 58-2,

## A. Exhaustion of Administrative Remedies

The City argues that Lanier failed to exhaust his administrative remedies with respect to his Title VII retaliation claim because he did not file a complaint with the United States Equal Employment Opportunity Commission ("EEOC"). LaNier contends that filing charges with California's Department of Fair Employment and Housing ("DFEH") was sufficient to constitute filing charges with the EEOC under the two agencies' Worksharing Agreement, which provides for automatic "dual-filing" of charges filed with either agency under certain conditions.

"A person seeking relief under Title VII must first file a charge with the EEOC within 180 days of the alleged unlawful employment practice, or if, as here, the person initially instituted proceedings with the state or local administrative agency, within 300 days of the alleged unlawful employment practice." *Surrell v. Cal. Water Serv. Co.*, 518 F.3d 1097, 1003 (9th Cir. 2008) (citing 42 U.S.C. § 2000e-5(e)(1)). If the EEOC does not bring suit based on the charge, the EEOC must "notify the person aggrieved" that he can file suit. 42 U.S.C. § 2000e-5(f)(1). The notice is accomplished through a right-to-sue letter. Once a person receives a right to sue letter from the

---

Exh. J); and (3) an FY 2014 extension of the FY 2013 "Worksharing Agreement" (*Id.*). On summary judgment, documentary evidence such as the Guidance, Worksharing Agreement, and the extension to the Worksharing Agreement must be properly authenticated before being considered by the district court. Here, the Guidance is self-authenticating under Federal Rule of Evidence 902(5) as a "book, pamphlet, or other publication purporting to be issued by a public authority," and the Worksharing Agreement and its extension are self-authenticating under Federal Rule of Evidence 902(1) as domestic public documents that are sealed and signed. Therefore, these documents are properly admissible and will be considered accordingly. The City's requests for judicial notice are denied as moot.

LaNier requests the Court take judicial notice of (1) this Court's Order Denying City of Chula Vista's Motion to Dismiss dated February 16, 2016 in the instant case (ECF No. 34), and (2) Valerie Taylor's First Amended Complaint filed before this Court in related case No. 15-cv-0586. This request is granted in part and denied in part. To the extent LaNier requests judicial notice of the existence and authenticity of the aforementioned court filings, the request is granted. *See In re Icenhower*, 755 F.3d 1130, 1142 (9th Cir. 2014) (citation omitted) (explaining that federal courts may judicially notice "court filings and other matters of public record"). To the extent LaNier requests judicial notice of the *truth* of the contents of these documents, the request is denied. *See Lee v. City of Los Angeles*, 250 F.3d 668, 689–90 (9th Cir. 2001) (explaining that federal courts may not take judicial notice of facts that are subject to reasonable dispute).

EEOC, he has 90 days to file suit. *Id.* § 2000e-5(f)(1).

Here, LaNier filed a retaliation charge under the FEHA on June 23, 2014. (ECF No. 56-3, Exh. A.) He received a DFEH Notice of Case Closure and Right to Sue the same day. *Id.* The Notice advised LaNier that to obtain a *federal* right to sue notice, he must file a complaint within 30 days of receipt of the DFEH Notice or within 300 days of the alleged unlawful act, whichever was earlier. LaNier never filed a complaint with the EEOC or obtained a federal right to sue notice before adding a Title VII retaliation claim to his Complaint after his case was removed to federal court.

LaNier asserts that under the then operative Worksharing Agreement between the EEOC and DFEH, the charges he filed with the DFEH were deemed constructively filed with the EEOC. On the basis of this dual-filing theory, LaNier contends that he was entitled to a federal right to sue letter from the EEOC once the EEOC did not timely act on his charge. LaNier argues that his entitlement to a federal right to sue letter permitted him to bring a Title VII retaliation claim once the EEOC failed to send the letter.

Although LaNier's explanation of the dual-filing theory is correct as a general matter, dual-filing is not applicable here. This is because LaNier did not bring a Title VII retaliation claim as part of his initial charges with the DFEH. The June 23, 2014 complaint filed with the DFEH alleged retaliation against the City of Chula Vista under the FEHA. There is no mention of Title VII. (*See* ECF No. 56-3, Exh. A.) Thus, the dual-filing provisions of the EEOC-DFEH Worksharing Agreement do not aid LaNier. As a state agency processing a state retaliation claim, the DFEH was not required under the Worksharing Agreement to dual-file LaNier's *state* claim with the EEOC. The EEOC was never notified of LaNier's Title VII retaliation claim, and therefore LaNier was not entitled to a federal right to sue letter. Accordingly, the Court grants the City's motion for summary judgement on LaNier's Title VII retaliation claim on grounds that LaNier failed to exhaust his administrative remedies.

**B.      Whether the City was LaNier's Employer**

The City moves for summary judgment of LaNier's FEHA retaliation claim on grounds that it was not LaNier's "employer" and therefore cannot be held liable for retaliation. LaNier contends that under the HIDTA program, grantees of HIDTA funding such as the City are the employers of any personnel hired to carry out the objectives of the HIDTA.

The FEHA prohibits an "employer" from engaging in retaliation. Cal. Govt. Code § 12940(g). Thus, for FEHA protections to apply, there must be "some connection with an employment relationship," although the connection "need not necessarily be direct." *Vernon v. State*, 10 Cal. Rptr. 3d 121, 128 (Ct. App. 2004) (quoting *Lutcher v. Musicians Union Local 47*, 633 F.2d 880, 883 (9th Cir. 1980)). In determining the existence of an employer-employee relationship, courts consider factors such as the payment of salary, the obligation of the defendant to train the employee, the authority of the defendant to hire, promote, discipline or terminate the employee, and the extent of the defendant's right to control and direct the activities of the person rendering service. *Vernon*, 10 Cal. Rptr. 3d at 130. Of these factors, the extent of the defendant's "right to control" is generally considered the most important. *Id.*

The City argues that LaNier cannot prove the City was his employer because the City had no right to control Lanier's activities. Specifically, the City contends that LaNier's ultimate supervisor was the SDI-HIDTA Executive Board; that the money for LaNier's position came from the federal HIDTA budget; that the City does not have any authority over SDI-HIDTA operations; and that LaNier worked on a national initiative that supported the national HIDTA program, rather than the City.

The relationship between the City and LaNier defies easy categorization. But the City's assertions and evidence do not establish that LaNier cannot prove the City was his employer for purposes of retaliation. Viewing the evidence in the light most favorable to LaNier, there is a triable issue as to whether the City was LaNier's employer.

First, notwithstanding the City's attempt to disassociate itself from LaNier, there is evidence of a substantive employment connection. Lanier was on the City of Chula Vista payroll. (LaNier Decl. ¶ 14.) He was assigned a City of Chula Vista employee number. *Id.* As NMI Director, LaNier occupied a "Chula Vista middle management position." (Lanier Decl. Exh. 6-1.) And although the City asserts that no one from the City interviewed LaNier for his position, the evidence also indicates that LaNier's position had to be approved by the Chula Vista City Council. (LaNier Decl. ¶ 14.) Furthermore, when LaNier was hired, he attended a new employee program for City employees and signed a document requiring him to abide by all City of Chula Vista policies and procedures. (*Id.*) When LaNier resigned, he was required to undergo an exit interview with the City's Human Resources Department. At minimum, these factors suggest "some connection with an employment relationship," even if the connection is indirect. *Vernon*, 10 Cal. Rptr. 3d at 128.

Second, the unique structure of the HIDTA program would permit a reasonable jury to find that the City was LaNier's employer. The National HIDTA Program Guidance states that "HIDTAs and their Executive Boards are not considered legal entities under Federal law and generally lack the authority to enter into contracts, hire employees, or obligate federal funds." (Guidance § 3.4.5.) Instead, HIDTA Executive Boards select grantees, such as the City here, who in turn "use HIDTA funds to hire employees or . . . enter into contracts with individuals to manage and staff the HIDTA." (Guidance § 6.8.1.) Neither side disputes that LaNier's position depended on federal HIDTA funding provided to the City of Chula Vista. But this fact does not prove the City's point. The obvious inference to be drawn from the Guidance is that the City received HIDTA funding to allow *the City* to hire employees to manage and staff the SDI-HIDTA. That is what happened here. The City received HIDTA funding, and the City hired LaNier to staff the SDI-HIDTA.

The Guidance's explanation of the relationship between the Executive Board and the HIDTA Director further suggests why there is a triable issue as to the City's

status as LaNier's employer. Although the Guidance states that the Board selects an individual to serve as the HIDTA Director (Guidance § 3.4.7.), the Board's actual authority over the Director is expressly limited. The Guidance provides that the individual selected to serve as HIDTA Director "will be an employee or contractor *of a grantee* and will be subject to all employment, contracting, and other conditions established *by that grantee*." *Id.* Such is the case here. The Board selected McAdam to serve as Director of the SDI-HIDTA, and then McAdam was hired as an employee of the City of Chula Vista. (ECF No. 53-3, McAdam Decl. ¶ 5.) By the terms of the Guidance, McAdam was subject to all employment conditions established by the City. On this record, it is reasonable to infer that LaNier, who was hired into a City of Chula Vista middle management position, was similarly subject to all employment conditions established by the City.

Finally, there are important policy implications should the Court decide as a matter of law, at this stage of the litigation, that the City was not LaNier's employer. For one thing, if the City was not LaNier's employer, it is unclear who so qualifies. HIDTA is a "program," not a suable entity, and the Executive Board neither hired LaNier nor paid his salary. To decide on summary judgment that the City was not LaNier's employer would run counter to the principle that FEHA provisions are to be construed broadly to effectuate the statute's remedial purpose. *Yanowitz v. L'Oreal USA, Inc.*, 116 P.3d 1123, 1139 n.14 (Cal. 2005) (explaining that provisions of the FEHA "are to be construed broadly and liberally in order to accomplish its purposes"). For another thing, it seems improper to allow the City to take advantage of federal funds and then escape responsibility for the employees it hires pursuant to those funds. If the City wishes to enjoy the benefits of its status as a HIDTA grantee, it is not unreasonable to require it be bound as an employer to the personnel it hires with HIDTA funds.

The Court is aware that this case does not present the typical employer-employee relationship. But the fact that the City did not exercise day-to-day control

over LaNier does not conclusively establish that the City was not his employer. Under the circumstances presented here, there is a genuine dispute of fact as to whether the City was LaNier's employer for purposes of his retaliation claim. Accordingly, the City's motion for summary judgment on this ground is denied.

## C.     Whether HIDTA was a "Special Employer"

The City next argues for summary judgment on grounds that the SDI-HIDTA Executive Board was LaNier's "special employer" and thus responsible for any alleged retaliation that took place while LaNier was assigned to the SDI-HIDTA. The City points to evidence that LaNier worked on a HIDTA initiative (rather than on assignments for the City) and stresses that the City "maintained no authority over the SDI HIDTA's operations." (Mot. Summ. J. 18:3).

At common law, a special employment relationship arises when a "'general' employer . . . lends an employee to another employer and relinquishes to the borrowing employer all right of control over the employee's activities." *State ex rel. Dep't of Cal. Highway Patrol v. Superior Court*, 343 P.3d 415, 417 (Cal. 2015) (quoting *Marsh v. Tilley Steel Co.*, 606 P.2d 355, 358–59 (Cal. 1980)). "During this period of transferred control, the special employer becomes solely liable under the doctrine of respondeat superior for the employee's job-related torts." *Id.* A special employer can only qualify as such when it has "power to supervise the details of the employee's work." *Marsh*, 606 P.2d at 359. "Mere instruction by the borrower on the result to be achieved will not suffice." *Id.*

Here, there is a genuine dispute as to whether the Board qualifies as a "special employer." Although the Guidance makes clear that the Board sets the overall strategy for the HIDTA, the City makes no showing that the Board either possessed or exercised "power to supervise the details of [LaNier's] work." *Marsh*, 606 P.2d at 359. Indeed, the Board's responsibility to "provid[e] direction and oversight" in setting goals for the HIDTA, (Guidance § 3.4.2), sounds similar to the "mere instruction . . . on the result to be achieved" that the California Supreme Court has

said is insufficient to find a special employment relationship, *Marsh*, 606 P.2d at 359.

Nor has the City shown the absence of a genuine dispute as to one of the prerequisites to a special employment relationship—the general employer's relinquishment of all right of control over the employee's activities. Of course, LaNier was part of the SDI-HIDTA staff, and his day-to-day work supported that program. But to say LaNier supported the HIDTA full-time is not the same as proving the City relinquished "all right of control" over LaNier's activities. *Marsh*, 606 P.2d at 359. One of the more mundane examples of the City's right of control is the fact that LaNier, as NMI Director, was required to fully comply with all City policies and procedures regarding time and attendance, scheduling, and leave requests. (LaNier Decl. Exh. 6-2.) This administrative control may not seem like much compared to a hypothetical situation where the City was directing LaNier's every move. But the City's administrative control does suggest a right of more direct control, even if that right was not exercised. This is an especially reasonable inference given that the Executive Board—the alleged "special employer"—did not exercise the control that the City asserts it relinquished to the Board.

Finally, some of the circumstances that California courts have identified as tending to negate the existence of a special employment relationship are present here. *Marsh*, 606 P.2d at 359. For example, LaNier was not paid by the Board, and the evidence suggests he could not be discharged by the Board absent the Board's "consultation" with the City. (Guidance §§ 3.4.7, 3.4.8.) Furthermore, as NMI Director, LaNier was "a skilled worker with substantial control over operational details," another factor that undercuts a finding of special employment. *Marsh*, 606 P.2d at 359.

In sum, the City has not shown it is entitled to summary judgment on grounds that the Board was LaNier's special employer. The evidence and reasonable inferences drawn therefrom show a genuine dispute on this issue. Accordingly, the City's motion for summary judgment on this ground is denied.

**D.     Retaliation under the FEHA**

California's FEHA prohibits employers from retaliating against employees who oppose or object to discrimination and harassment in the workplace. Cal. Govt. Code § 12940(h). To establish a prima facie case of retaliation under the FEHA, a plaintiff must show "(1) he or she engaged in a protected activity, (2) the employer subjected the employee to an adverse employment action, and (3) a causal link existed between the protected activity and the employer's action." *Yanowitz*, 116 P.3d at 1130. Under the FEHA, "[t]he prima facie burden is light; the evidence necessary to sustain the burden is minimal." *Moore v. Regents of the Univ. of Cal.*, 206 Cal. Rptr. 3d 841, 857 (Ct. App. 2016).

FEHA claims are governed by the well-known *McDonnell Douglas* burden-shifting framework applied to Title VII claims. *See McDonnell Douglas v. Green*, 411 U.S. 792 (1973). Under this framework, once the plaintiff establishes a prima facie case, the burden then shifts to the defendant to articulate a legitimate, non-retaliatory reason for the adverse employment action. *Yanowitz*, 116 P.3d at 1130. If the employer produces a legitimate, non-retaliatory reason for the adverse employment action, "the presumption of retaliation 'drops out of the picture,' and the burden shifts back to the employee to prove intentional retaliation." *Yanowitz*, 116 P.3d at 1130 (quoting *Morgan v. Regents of Univ. of Cal.* 105 Cal. Rptr. 2d 652, 665 (Ct. App. 2008)).

**a.     Protected Activity**

The City argues that LaNier cannot prove he engaged in protected activity. Specifically, the City asserts that LaNier could not have reasonably believed that Ralph Partridge's conduct toward Valerie Taylor was unlawful.

An employee's opposition to an employment practice is protected under the FEHA so long as the employee had a reasonable and good faith belief that the practice was unlawful. *Yanowitz*, 116 P.3d at 1131–32. The opposed conduct need not actually be unlawful for an employee's opposition to be protected. *Id.* at 1131 n.4 ("[I]t is good faith and reasonableness, not the fact of discrimination, that is the critical inquiry in a

retaliation case.").

Here, LaNier asserts he engaged in protected activity by complaining to McAdam about Partridge's alleged behavior toward Taylor, which included bragging to Taylor about the size of his penis, constantly visiting Taylor in her office for hugs and fist bumps, calling Taylor a "fucking cunt" when she rejected his advances, and insinuating that Taylor would be his next wife. (LaNier Decl. ¶ 10; LaNier Dep. at 54.) LaNier asserts that he complained because he believed Partridge's conduct constituted sexual harassment and created a hostile work environment.

LaNier could reasonably believe that Partridge's conduct violated the FEHA. The FEHA's "prohibition against sexual harassment includes protection from a broad range of conduct, ranging from expressly or impliedly conditioning employment benefits on submission to or tolerance of unwelcome sexual advances, to the creation of a hostile work environment that is hostile or abusive on the basis of sex." *Lyle v. Warner Bros. Television Prods.*, 132 P.3d 211, 219 (Cal. 2006) (quoting *Miller v. Dep't of Corrections*, 115 P.3d 77, 87 (Cal. 2005)). The conduct about which LaNier complained—including Partridge bragging about the size of his penis—bears reasonable resemblance to the categories of conduct relevant to sexual harassment claims.

The City argues that Partridge's conduct was too isolated and sporadic to meet the legal threshold for hostile work environment sexual harassment. This may or may not be true, but the accuracy of LaNier's legal conclusions is irrelevant. An employee is not expected to thoroughly assess case law and statutes before opposing conduct he reasonably believes to be unlawful. *See Yanowitz*, 116 P.3d at 1131 ("It is well established that a retaliation claim may be brought by an employee who has complained of or opposed conduct that the employee reasonably believes to be discriminatory, even when a court later determines the conduct was not actually prohibited by the FEHA."). Here, LaNier could reasonably believe that Partridge's crude conduct and insulting remarks were unlawful. Thus, the evidence is sufficient

to satisfy this element of LaNier's prima facie case of retaliation.

**b.    Adverse Employment Action**

The City argues that LaNier cannot prove the City subjected him to an adverse employment action because the Board, rather than the City, voted to terminate LaNier. This argument misses the mark for at least two reasons.

First, the evidence supports the reasonable inference that the City was at least partly responsible for LaNier's forced resignation. Although the Board voted to terminate LaNier, the Guidance suggests the Board could only do so with the concurrence of the City. This inference follows from the limits of the Board's authority to remove McAdam. (*See* Guidance § 3.4.7 (providing that the Executive Board may remove a HIDTA Director or significantly limit his or her authority only "in consultation with the grantee"). If McAdam, who holds a City supervisory position, can only be removed in consultation with the City, then it is reasonable to infer that LaNier, who served in a City middle management position, could only be removed in consultation with City as well. Of course, this is not the only inference that may be drawn, but it is a reasonable one. *O'Day v. McDonnell Douglas Helicopter Co.*, 79 F.3d 756, 761 (9th Cir. 1996) (explaining that on summary judgement, courts "entertain every reasonable inference in favor of the non-moving party"). On this record, a reasonable jury could find that the City subjected LaNier to an adverse employment action by consulting with the Board and ultimately processing LaNier's retirement.

Second, even assuming that the Board was solely responsible for LaNier's forced resignation, a reasonable jury could find that McAdam's act of reporting to the Board was itself an adverse action. For purposes of FEHA retaliation claims, an adverse employment action is one that materially affects the terms, conditions, or privileges of employment. *Yanowitz*, 116 P.3d at 1137. This includes not only termination or demotion, "but also the entire spectrum of employment actions that are reasonably likely to adversely and materially affect an employee's job performance

or opportunity for advancement in his or her career." *Id.* at 1138. Here, a reasonable jury could find that McAdam's action—that is, accusing LaNier of serious ethical misconduct in front of the Board—was an adverse employment action given that the report could jeopardize LaNier's continued employment with the City. On this record, then, the evidence is sufficient to establish the second element of LaNier's prima facie case of retaliation.

### c.    Causal Connection

The City argues LaNier cannot prove a causal connection between his protected activity and an adverse employment action because he did not contact anyone at the City about the alleged harassment.

Retaliation claims under FEHA require proof that the unlawful retaliation would not have occurred "but for" the alleged wrongful actions of the employer. *Reeves v. Safeway Stores, Inc.*, 16 Cal. Rptr. 3d 717, 726 (Ct. App. 2004). The requisite causal link may be inferred from circumstantial evidence such as evidence of "the employer's knowledge that the employee engaged in protected activities and the proximity in time between the protected action and the allegedly retaliatory employment decision." *McRae v. Dep't of Corr. & Rehab.*, 48 Cal. Rptr. 3d 313, 321 (Ct. App. 2006) (citation omitted).

Here, there is a genuine dispute as to whether LaNier's complaints to McAdam about Partridge's alleged conduct can be imputed to the City, such that the City was aware LaNier had engaged in protected activity. McAdam was a Chula Vista supervisory employee "subject to all employment . . . and other conditions" established by the City. (Guidance § 3.4.7.) LaNier was a Chula Vista middle management employee who, upon being hired, signed a document obligating him to abide by the City's policies and procedures as part of his employment. (LaNier Decl. ¶ 14.) LaNier also asserts that he understood McAdam to be an employee of the City. On this evidence, it was reasonable for LaNier to believe that contacting McAdam, a supervisor, about Partridge's alleged harassment was tantamount to contacting the

City. McAdam even intimated he would address the situation by "talk[ing] to Ralph." (LaNier Decl. ¶ 10.) Thus, a reasonable jury could find that McAdam's knowledge of the alleged harassment is properly imputed to the City. *Reeves v. Safeway Stores, Inc.*, 16 Cal. Rptr. 3d at 727 n.9 ("An employer can generally be held liable for the discriminatory or retaliatory actions of supervisors.") (citation omitted).

In sum, the City has failed to show that LaNier's evidence is insufficient to state a prima facie case of retaliation under the FEHA. The City's motion for summary judgment on this ground is denied.

**E.      Defamation**

The City moves for summary judgment on LaNier's defamation claim on various grounds, one of which is that any allegedly defamatory statement made by McAdam was protected by California's common interest privilege set forth in California Civil Code § 47(c).[3] The Court agrees summary judgment is appropriate on this ground.

To prove defamation under California law, a plaintiff must show the intentional publication of a statement of fact that is false, unprivileged, and has a natural tendency to injure or cause special damage. *Family Home & Fin. Ctr., Inc. v. Fed. Home Loan Mortg. Corp.*, 525 F.3d 822, 826 (9th Cir. 2008) (quoting *Smith v. Maldonado*, 85 Cal. Rptr. 2d 397, 402 (1999)). Under the common interest privilege set forth in Cal. Civ. Code § 47(c), "a defendant who makes a statement to others on a matter of common interest is immunized from liability for defamation so long as the statement is made without malice." *Lundquist v. Reusser*, 875 P.2d 1279, 1279 (Cal. 1994). The defendant has the initial burden of showing that the allegedly defamatory statement was made on a privileged occasion. *Id.* at 1284. The burden then shifts to the plaintiff to show the defendant made the statement with "actual malice." *Id.*

A plaintiff may establish actual malice in two ways: (1) "by a showing that the

---

[3] In making this argument, the City assumes that McAdam is a City employee.

publication was motivated by hatred or ill will towards the plaintiff," or (2) "by a showing that the defendant lacked reasonable grounds for belief in the truth of the publication and therefore acted in reckless disregard of the plaintiff's rights." *Sanborn v. Chronicle Pub. Co.*, 556 P.2d 764, 768 (Cal. 1976) (quoting *Roemer v. Retail Credit Co.*, 119 Cal. Rptr. 82, 88 (Ct. App. 1975)). To prove reckless disregard, a plaintiff must show the defendant "made the false publication with a high degree of awareness of . . . probable falsity, or must have entertained serious doubts as to the truth of his publication." *Young v. CBS Broad., Inc.*, 151 Cal. Rptr. 3d 237, 245 (Ct. App. 2012) (citations omitted) (quoting *Harte-Hanks Commc'ns v. Connaughton*, 491 U.S. 657, 667 (1989)). "When a plaintiff fails to raise triable issues of fact regarding whether a defendant acted with reckless disregard, a court may grant summary judgment in favor of the defendant as a matter of law." *Pashman v. Aetna Ins. Co.*, No. C–13–02835 DMR, 2014 WL 3571689, at *19 (N.D. Cal. July 18, 2014).

As an initial matter, the Court finds there is no genuine dispute as to whether McAdam's statement was made on a privileged occasion. McAdam made the statement to the SDI-HIDTA Executive Board, a body charged with "providing direction and oversight in establishing and achieving the goals for the [SDI-]HIDTA." (Guidance § 3.4.2.) In light of its oversight responsibilities, the Board had a legitimate interest in the conduct of LaNier, who was in charge of an important SDI-HIDTA initiative, and whose business travel was paid for with HIDTA funds. (LaNier Decl. Exh. 6-1.) McAdam shared this interest in LaNier's conduct given that McAdam's responsibilities included "day-to-day administrative, financial, and program management for the operations of the HIDTA" and advising the Board "concerning the performance of HIDTA initiatives," such as the NMI. (Guidance § 3.5.1.) Thus, McAdam's statement to the Board concerning LaNier's allegedly false justification for traveling to Puerto Rico was "a statement to others on a matter of common interest," and is privileged absent actual malice. *Lundquist*, 875 P.2d at 1279.

LaNier does not dispute that McAdam's statement was made on a privileged

occasion; rather, he asserts summary judgment should be denied because there is a genuine dispute as to whether McAdam made the statement with actual malice. Specifically, LaNier contends McAdam did not have reasonable grounds to believe the truth of his statement to the Board and therefore acted with reckless disregard. The City argues there is no triable issue on this point because: (1) LaNier testified during his deposition that he told McAdam that ONDCP officials Shannon Kelly and Mike Gottlieb asked him to travel to Puerto Rico, and (2) McAdam spoke with Kelly and Gottlieb before making the allegedly defamatory statement to the Board, and both of them denied directing or requesting LaNier to travel to Puerto Rico.

LaNier's evidence that McAdam lacked reasonable grounds for believing the truth of his statement consists of the following: (1) a July 11, 2013 email from Shannon Kelly asking LaNier to "reach out" to Mike Roy, Director of the Puerto Rico HIDTA, regarding possible "guidance" on marijuana operations (LaNier Decl. Exh. 3); (2) an email from McAdam to Roy, sent prior to LaNier making the trip to Puerto Rico, in which McAdam touted LaNier's expertise (*Id.* Exh. 4-1); (3) the fact that there is no policy requiring ONDCP to request or direct any business trip of LaNier within the United States or its territories (*Id.* ¶ 8, Exh. 6-2); (4) the fact that McAdam has nothing in writing from Mike Gottlieb indicating Gottlieb disapproved of the Puerto Rico trip (ECF No. 56-1, Lynn Decl. Exh. B-7); (5) McAdam's admission that he was "irritated" by the situation involving Partridge and Taylor in the SDI-HIDTA office and that he knew LaNier was complaining about Partridge's conduct on behalf of Taylor (*Id.* Exh. F); (6) the fact that the Board did not undertake an independent investigation to verify McAdam's statement regarding LaNier's alleged untruthfulness (*Id.* Exh. A-3); and (7) the fact that during LaNier's exit interview, McAdam told LaNier his termination was not related to his job performance (LaNier Decl. ¶ 9).

The Court finds LaNier's evidence, taken as true, does not raise a genuine dispute as to whether McAdam lacked reasonable grounds to believe the truth of his

statement to the Board.

First, the July 11, 2013 email from Kelly asking LaNier to "reach out" to Mike Roy is irrelevant to McAdam's grounds for belief because there is no evidence McAdam was copied on, or was otherwise aware of, the email. And even if McAdam had read the email, Kelly's request for LaNier to "reach out" to Roy does not support the inference that McAdam should have interpreted the email as Kelly asking or directing LaNier to travel to Puerto Rico. *See Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1065 n.10 (9th Cir. 2002) (citation omitted) (explaining that on summary judgment the court need not draw *all* possible inferences in non-movant's favor, but only all *reasonable* ones). Indeed, LaNier testified at his deposition that he did not think anything in Kelly's July 11, 2013 email suggested that he travel to Puerto Rico.[4]

Second, McAdam's email to Roy touting LaNier's expertise does not

_____

[4] At his January 7, 2015 deposition, LaNier testified as follows:

"Q.     Exhibit 22 is an email from Shannon Kelly to you dated July 11, 2013. You've seen this before, haven't you?

A.     [LaNier] Yes, I have.

Q.     You spoke to her on July 11, right?

A.     [LaNier] After I received this email.

Q.     You don't read anything in this email, Exhibit 22, do you, that suggests you travel to Puerto Rico?

A.     [LaNier] No.

Q.     And in the conversation you had with Ms. [] Kelly on July 11 after you got this email, was there anything she said that suggested to you that she or anybody in ONDCP wanted you to travel to Puerto Rico?

A.     [LaNier] No."

(ECF No. 46-1, Stayton Decl., Exh. E, LaNier Dep. 524:20–525:11.)

undermine McAdam's basis for belief in the truth of his statement. There is no contradiction in McAdam respecting LaNier's subject matter expertise and later forming a reasonable belief that LaNier lied about ONDCP directing or requesting the trip to Puerto Rico. Furthermore, McAdam's statement in the email that "[m]y understanding is that ONDCP suggested [the trip]" is not significantly dispositive where there is no basis to find that McAdam's "understanding" came from ONDCP rather than from LaNier himself. Here, the evidence shows that LaNier told McAdam that ONDCP requested and directed he travel to Puerto Rico, and that McAdam learned from ONDCP that that was not the case (ECF No. 46-1, Stayton Decl., Exh. D, LaNier Dep. 271:9–272:2; ECF No. 53-3, Exh. B ("McAdam Decl.") ¶¶ 19, 20).[5] On this record, McAdam's email to Roy does not raise a genuine dispute of fact as to McAdam's grounds for believing LaNier had been untruthful.

Third, the fact there is no official policy requiring ONDCP to request or direct LaNier's business-related travel is irrelevant to McAdam's belief in the truth of what he told the Board. McAdam did not tell the Board LaNier traveled to Puerto Rico without required ONDCP authorization. Rather, McAdam allegedly told the Board that LaNier falsely represented ONDCP had requested and directed the trip be taken. These are separate and distinct issues. The fact that LaNier did not *need* an ONDCP request to travel does not call into question evidence showing LaNier told McAdam that he *received* such a request. Therefore, the lack of an official policy requiring ONDCP to request or direct LaNier's travel does not create a genuine dispute as to whether McAdam reasonably believed LaNier lied about traveling at ONDCP's

---

[5] LaNier attempts to dispute this evidence by citing the LaNier Declaration ¶¶ 4–8. But nothing in the paragraphs cited controverts McAdam's evidence that LaNier told him ONDCP requested and directed he travel to Puerto Rico, and that he learned from ONDCP that that was not the case. Taken as true, the portions of the LaNier Declaration cited by LaNier establish that (1) McAdam authorized the Puerto Rico trip, (2) McAdam was under the impression ONDCP suggested the trip, (3) McAdam's authorization was the only authorization required for LaNier to travel, and (4) Kelly and Gottlieb were aware LaNier would be traveling to Puerto Rico. At no point in the LaNier Declaration does LaNier deny having told McAdam that ONDCP requested and directed the trip, or challenge McAdam's account of his conversation with ONDCP on the issue.

behest.

Fourth, the fact that McAdam has nothing in writing indicating Gottlieb disapproved of the Puerto Rico trip does not create a genuine dispute of fact regarding reckless disregard. For one thing, the issue is not whether ONDCP "approved" or "disapproved" of the trip; the issue is whether ONDCP specifically requested or directed LaNier to take the trip. In addition, LaNier does not explain how the lack of something in writing from Gottlieb creates a triable issue where the evidence shows McAdam spoke with Gottlieb before making the allegedly defamatory statement to the Board. (McAdam Decl. ¶¶ 18–20.)

Fifth, McAdam's admission that he was "irritated" by alleged incidents of sexual harassment in the SDI-HIDTA office, and aware of LaNier's role in complaining about the harassment on Taylor's behalf, does not raise a genuine dispute as to whether McAdam had reasonable grounds for his statement to the Board. Although the evidence supports the reasonable inference that McAdam was frustrated with LaNier, such frustration could only support a finding of malice to the extent it impacted McAdam's "actual belief" concerning the truthfulness of his statement. *See Harkonen v. Fleming*, 880 F. Supp. 2d 1071, 1081 (N.D. Cal. 2012) (explaining that the focus of the actual malice inquiry is on "the defendant's attitude toward the truth or falsity of the material published," not "the defendant's attitude toward the plaintiff") (quoting *Christian Research Inst. v. Alnor*, 55 Cal. Rptr. 3d 600, 618 (Ct. App. 2007)); *Reader's Digest Ass'n v. Superior Court*, 690 P.2d 610, 619 (Cal. 1984) (explaining that "mere proof of ill will" is insufficient to prove actual malice). Here, McAdam spoke to Kelly and Gottlieb *before* communicating to the Board his belief that LaNier had been untruthful. Thus, even if McAdam was frustrated with LaNier, LaNier has not raised a genuine dispute of fact that this frustration impacted McAdam's belief in the truth of his statement.

Sixth, the fact that the Board did not independently investigate the truth of McAdam's statement is irrelevant. McAdam is the person who made the allegedly

defamatory statement and so it his basis for belief in the truth of the statement that matters, not the Board's.

Seventh, the fact that McAdam told LaNier during LaNier's exit interview that his termination was not related to job performance does not raise a triable issue as to reckless disregard. To prove reckless disregard, a plaintiff must provide evidence that the defendant had a high degree of awareness that the statement in question was probably false, or that the defendant entertained serious doubts about the truth of the statement. *Young*, 151 Cal. Rptr. 3d at 245. McAdam's basis for believing the truth of his statement was his conversation with Kelly and Gottlieb before speaking to the Board. Thus, the fact that McAdam told LaNier his termination was not related to performance does not raise a genuine dispute as to whether McAdam lacked reasonable grounds for believing the truth of his statement.

In sum, the City has shown that McAdam's statement to the Board involved a matter of common interest, and LaNier's evidence, and reasonable inferences drawn therefrom, fail to raise a genuine dispute of fact regarding actual malice. Thus, the common interest privilege of Cal. Civ. Code § 47(c) applies, McAdam is protected from liability for his statement to the Board, and by extension, the City is protected from liability even if it is deemed to be McAdam's employer.

## CONCLUSION

For the foregoing reasons, the City's motion for summary judgment is GRANTED IN PART and DENIED IN PART. (ECF No. 53.)

Summary judgement is granted in favor of the City on LaNier's Title VII retaliation claim and defamation claim. Summary judgement is denied on LaNier's FEHA retaliation claim.

**IT IS SO ORDERED.**

**DATED: September 25, 2017**

Hon. Cynthia Bashant
United States District Judge

15cv360